UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VTT TECHNICAL RESEARCH CENTRE OF FINLAND LTD., <br><br> Plaintiff, <br><br> v. <br><br> HID GLOBAL CORPORATION, and OMNI-ID USA, INC. <br><br> Defendants. | CASE NO.: _____ <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff VTT Technical Research Centre of Finland Ltd. files this Complaint and demand for a jury trial seeking relief for patent infringement by Defendants HID Global Corporation ("HID Global") and Omni-ID USA, Inc. ("Omni-ID") (collectively, "Defendants"). Plaintiff states and alleges the following:

**THE PARTIES**

1. This case is brought by VTT Technical Research Centre of Finland Ltd. ("VTT"), a globally recognized leader in scientific and technological innovation. VTT is a limited company organized and existing under the laws of Finland, with its headquarters in Espoo, Finland. VTT's principal place of business is located at Tekniikantie 21, Espoo, PL1000, 02044 VTT, Finland.

2. Established in 1942, VTT operates under the mandate of Finland's Ministry of Employment and the Economy, with a mission to drive scientific and technological advancement for the benefit of industry, society, and global innovation. Over the past eight decades, VTT has

played a pivotal role in fostering groundbreaking research and transforming scientific discoveries into real-world applications that address critical challenges across multiple industries.

3. With a legacy of discovery and innovation, VTT serves as a cornerstone of both fundamental and applied research in numerous technical fields. Its research spans a broad spectrum, including information and communication technology, sustainable energy solutions, biotechnology, advanced materials, and automation. These efforts, including the scientific and technical breakthroughs that led to the patent at issue in this case, require significant investment from both public and private sources. VTT conducts approximately $190 million in research annually, with funding from the Finnish government, the European Union, and private industry partners who recognize VTT's role as a global leader in cutting-edge technology development.

4. VTT's expertise is driven by a world-class team of more than 1,500 scientists, researchers, and engineers. The knowledge generated through VTT's research extends far beyond Finland, benefiting governments, businesses, academic institutions, and consumers around the world. Every year, over 1,100 companies from around the world turn to VTT to enhance their products and services through research and development. VTT's discoveries have directly contributed to advancements in healthcare, sustainable manufacturing, cybersecurity, smart mobility, and next-generation telecommunications. To maximize the societal and industrial impact of its research, VTT actively patents and commercializes its inventions, ensuring that breakthrough technologies reach the market while reinvesting proceeds into further innovation. Leveraging its vast investment in innovation, VTT receives nearly 200 invention disclosures annually to expand its patent portfolio. Since its patents are available for licensing, VTT drives transformative innovations that shape industries and enhance everyday life. This

model allows VTT to sustain and expand its mission of pioneering cutting-edge solutions that address both present and future challenges.

5.  As a testament to its commitment to innovation, VTT has been awarded more than 1,400 patents, with over 500 additional patent applications currently under examination in patent offices worldwide.  These patents span diverse fields, including artificial intelligence, automation, semiconductor technology, and next-generation wireless communications.  Among these is Radio Frequency Identification ("RFID") technology, where VTT has been a pioneer in the development of RFID design and operation, driving fundamental improvements in security, efficiency, and scalability.  VTT's innovations in RFID technology have played a crucial role in enabling modern logistics, asset tracking, and contactless communication systems, shaping how industries operate and interact with emerging technologies.

6.  On information and belief, Defendant HID Global Corporation ("HID Global") is a Delaware corporation with its principal place of business at 611 Center Ridge Drive, Austin, Texas 78753.  HID Global is a global supplier in secure identity solutions and RFID technology, providing a broad range of products used in access control, asset tracking, and industrial automation.  On information and belief, HID Global is a wholly owned subsidiary of ASSA ABLOY Inc., which itself is a wholly owned subsidiary of ASSA ABLOY AB, a corporation headquartered in Sweden.

7.  On information and belief, Defendant Omni-ID USA, Inc. ("Omni-ID") is a Delaware corporation with its principal place of business at 1200 Ridgeway Ave, Rochester, NY 14615.  Omni-ID has long been recognized as a supplier in the RFID industry, specializing in high-performance passive and active RFID tags designed for industrial asset tracking, logistics, and manufacturing applications.  Its RFID products have been widely used across various

industries, including aerospace, oil and gas, automotive, and supply chain management, where reliable and high-efficiency RFID solutions are critical.

8. On information and belief, in August 2021, HID Global acquired Omni-ID as part of a strategic expansion of its RFID technology portfolio. Through this acquisition, HID Global sought to strengthen its position in the industrial RFID sector by integrating Omni-ID's specialized RFID tag technology with its broader RFID solutions. This acquisition enabled HID Global to enhance its product offerings in asset tracking, logistics, and automation—sectors that heavily rely on RFID technologies. Through the acquisition, HID Global gained access to Omni-ID's RFID product line, including RFID antenna structures relevant to the patented inventions at issue in this case. On information and belief, HID Global has since marketed, sold, and deployed RFID solutions incorporating Omni-ID's technology, including products that infringe the '143 patent.

9. On information and belief, Omni-ID's integration into HID Global further cemented HID Global's place in the RFID market and expanded its global reach. By acquiring Omni-ID's RFID tag technologies, HID Global leveraged these innovations to expand its own RFID-enabled product offerings. On information and belief, since the acquisition, HID Global and Omni-ID have jointly developed, manufactured, and sold RFID products incorporating the technology at issue in this case. Despite their knowledge of VTT's patent portfolio, as detailed in this Complaint, HID Global and Omni-ID have continued to benefit from VTT's patented innovations without authorization, leading to their direct, indirect, and willful infringement of the '143 patent.

## THE ASSERTED PATENT

10. On May 25, 2010, United States Patent No. 7,724,143 ("the '143 patent") titled "Antenna Construction, for Example for an RFID Transponder System" was duly and legally issued by the United States Patent and Trademark Office. The '143 patent stems from Application No. 11/920,235, filed on May 8, 2006. VTT owns the entire right, title, and interest in and to the '143 patent, including the right to sue for and collect past damages. A true and correct copy of the '143 patent is attached to this Complaint as Exhibit A1.

11. Before the inventions disclosed in the '143 patent, RFID antenna designs suffered from significant limitations that hindered their widespread adoption and commercial viability. Traditional single-layer RFID antennas, such as conventional dipole-based structures, were prone to performance degradation when attached to various surfaces. This issue was particularly problematic in commercial applications where RFID tags needed to be affixed to different materials, such as metals, plastics, and composite surfaces. Changes in surface properties could significantly alter the antenna's impedance, causing unpredictable performance and reducing the effective read range of RFID transponders.

12. Another major drawback of preexisting RFID antenna designs was the cost and complexity of manufacturing. Many designs that are able to operate from various surfaces, including metal, required the use of vias—conductive pathways attached to the antenna structure—to achieve proper electrical connections between the metal layers of the antenna. These vias added complexity to the manufacturing process, increasing production costs and making RFID tags less feasible for large-scale, cost-sensitive applications. Additionally, antennas utilizing traditional PIFA structures required precise placement and orientation relative to their ground planes, further complicating production and assembly.

13. The limited efficiency of prior RFID antennas also constrained their reading distance. In many cases, existing antennas exhibited poor power transfer efficiency, resulting in significantly reduced operating ranges. Inconsistent reading distances forced businesses to rely on additional RFID readers, increasing overall infrastructure costs and reducing the economic benefits of RFID technology.

14. The '143 patent introduced a breakthrough antenna construction that addressed these critical limitations. The '143 patented design features a folded antenna structure with a transmission line connected to the ground plane at the fold. This novel configuration eliminated the need for vias, providing a more cost-effective and manufacturable RFID solution while maintaining high performance.

15. The innovative folded structure disclosed in the '143 patent not only simplified manufacturing but also enhanced the efficiency and reliability of RFID systems. When compared to, for example, elevated dipole structures, the antenna's design achieved a thinner structure while maintaining a longer read range, solving the industry-wide problem of performance degradation due to environmental factors. The improved efficiency of the antenna construction resulted in stronger signal reception and backscatter response, making RFID transponders based on the '143 patent more effective in real-world applications.

16. By solving these long-standing technical challenges, the inventions of the '143 patent represented a significant advancement in RFID technology. The cost reduction achieved through the elimination of vias, combined with improved reading distances and enhanced reliability, made RFID transponders based on the '143 patent's teachings highly suitable for large-scale commercial applications. These improvements directly contributed to the widespread

adoption of RFID technology in industries ranging from retail and logistics to healthcare and transportation.

17. To the extent applicable, VTT has complied with 35 U.S.C. § 287 for the '143 patent.

## JURISDICTION AND VENUE

18. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19. This Court has personal jurisdiction over Defendants because Defendants are incorporated in the State of Delaware and therefore reside in this State. Moreover, this Court has personal jurisdiction over Defendants consistent with the Due Process Clause of the United States Constitution and the Delaware Long-Arm Statute because the claims asserted herein arise out of or are related to Defendants' business activities in this State, including: (i) at least a portion of the infringing acts alleged in this Complaint; (ii) conducting business in Delaware, including the sale, offering for sale, and distribution of the Accused Instrumentalities (defined below); and (iii) regularly transacting business, engaging in persistent conduct, and deriving substantial revenue in Delaware from goods and services, including those incorporating the Accused Instrumentalities. 10 Del. C. § 3104.

20. Venue is proper in this District pursuant to at least 28 U.S.C. § 1400 because Defendants are incorporated in the State of Delaware and therefore reside in this State.

## BACKGROUND

21. In April 2018, during the RFID Journal Live! Conference in Orlando, Florida, VTT, through its representative Dr. Kaj Nummila, engaged in discussions with key

representatives from HID Global (Jean-Miguel Robadey) and Omni-ID (Dr. George Daddis) regarding VTT's pioneering RFID patent portfolio. During these discussions, VTT emphasized the significance of its patented innovations, including the advancements disclosed in the '143 patent, and its potential relevance to the RFID technologies being developed and commercialized by HID Global and Omni-ID.

22.     Following these initial discussions, in May 2018, VTT (Dr. Nummila) sent separate follow-up emails to HID Global (Mr. Robadey) and Omni-ID (Dr. Daddis), reiterating VTT's interest in exploring potential licensing or sale opportunities. Each email included a detailed list of VTT's RFID-related patent families, including the family stemming from PCT publication WO2006120287, from which the '143 patent issued in 2010. VTT sought to arrange a meeting with both HID Global and Omni-ID to discuss the potential applicability of VTT's patented technologies to their RFID products. Despite VTT's efforts to engage in productive discussions, neither HID Global nor Omni-ID agreed to a meeting at that time.

23.     In June 2018, VTT (Dr. Nummila) sent a second follow-up email to HID Global (Mr. Robadey), referencing the May 2018 email and again requesting a meeting to discuss VTT's RFID patent portfolio. In response, Mr. Robadey acknowledged receipt of the email and stated that he had scheduled a meeting with "our lawyer" in two weeks to review VTT's RFID portfolio. However, VTT received no further communication from HID Global, nor did HID Global provide any substantive response regarding its evaluation of VTT's patent portfolio.

24.     Around the same time, VTT (Dr. Nummila) also sent a second follow-up email to Omni-ID (Dr. Daddis), again referencing the May 2018 email and reiterating VTT's request for a meeting to discuss potential licensing or sale of its RFID patents. Unlike HID Global, Omni-ID

did not even acknowledge the email, nor did it provide any response or engage in further dialogue with VTT.

25. Following the acquisition of Omni-ID by HID Global, both have continued to develop, market, and sell RFID-based products that incorporate the patented technology at issue in this case. Accordingly, both HID Global and Omni-ID have knowingly benefited from the unauthorized use of VTT's patented innovations, despite having been made aware of VTT's intellectual property as early as 2018.

26. After identifying and examining specific HID Global/Omni-ID RFID products that practice the claims of the '143 patent, VTT, through its legal counsel, sent a formal letter to Defendants in April 2024 detailing its patent rights and its evaluation of Defendants' RFID product offerings. The letter referenced VTT's prior 2018 communications and noted Defendants' apparent lack of interest in licensing discussions at that time. The letter further provided a detailed infringement analysis, including a claim chart comparing claim 1 of the '143 patent to exemplary HID Global/Omni-ID products. In an effort to resolve the matter amicably, VTT's legal counsel proposed licensing discussions and invited Defendants to engage in good-faith negotiations.

27. From May 2024 through September 2024, legal counsel for VTT and Defendants exchanged correspondence concerning VTT's intellectual property and Defendants' RFID products. Despite VTT's repeated offers to engage in substantive discussions aimed at reaching a mutually beneficial resolution, Defendants declined to engage meaningfully in licensing negotiations. Instead, Defendants ultimately ceased communication with VTT and failed to respond to VTT's final correspondence sent on September 30, 2024.

28. Since September 2024, Defendants have not engaged in any substantive licensing discussions with VTT concerning the '143 patent, nor have they taken any steps to negotiate a resolution despite having full knowledge of the patent and its relevance to their RFID product offerings.

29. Defendants do not have a license to the '143 patent, either express or implied, and have continued their unauthorized use of VTT's patented technology.

30. On information and belief, Defendants have not taken any affirmative steps to avoid infringing the '143 patent after learning of it.

## COUNT I

### (Infringement of the '143 Patent)

31. VTT restates and realleges all the foregoing paragraphs as if fully stated herein.

32. On information and belief, Defendants have directly infringed and continue to directly infringe one or more claims of the '143 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing RFID devices that include a double-ended antenna circuit, a conductive ground plane, an insulation layer, and at least one transmission line connected to the ground plane through a fold in the edge of the antenna construction ("Accused Instrumentalities").  The Accused Instrumentalities include, but are not limited to, Defendants' RFID Tags & Beacons Products, such as HID® EXO Keg Tag™ RFID Tags, HID® EXO Pro Tag™ RFID Tags, HID® EXO Slim Tag™ RFID Tags, HID® EXO Tag™ RFID Tags, HID® IQ On-Metal Label™ RFID Tags, HID® Sense Passive Tag™ RFID Tags, and HID® SlimFlex™ RFID Tags.

33. Attached to this Complaint as Exhibit A2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '143 patent are met by the Accused Instrumentalities.

34. Defendants' infringement of the '143 patent has also been indirect.

35. On information and belief, Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '143 patent under 35 U.S.C. § 271(b), because they have induced and continue to induce third parties (including customers and end users) to use the Accused Instrumentalities. Such using by third parties constitutes direct infringement of one or more claims of the '143 patent.

36. For example, Defendants have supplied and continue to supply such induced third parties with the Accused Instrumentalities along with website materials, instructions, datasheets, promotional materials and the like that instructed/instruct them how to use the Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringe at least claim 1 of the '143 patent, or with willful blindness to that fact.[1] On information and belief, Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, use their Accused Instrumentalities in ways that directly infringe the

---

[1] *E.g.*, https://www.hidglobal.com/products/exo-keg-tag; https://www.hidglobal.com/documents/hid-exo-keg-tag-datasheet; https://www.hidglobal.com/products/exo-pro-tag; https://www.hidglobal.com/documents/exo-pro-tag-datasheet; https://www.hidglobal.com/products/exo-slim; https://www.hidglobal.com/documents/hid-exo-slim-tag-datasheet; https://www.hidglobal.com/products/exo-tag; https://www.hidglobal.com/documents/hid-exo-tag-datasheet; https://www.hidglobal.com/products/iq-om-labels; https://www.hidglobal.com/documents/hid-iq-metal-labels-datasheet; https://www.hidglobal.com/products/sense-passive-tag; https://www.hidglobal.com/documents/hid-sense-passive-tags-datasheet; https://www.hidglobal.com/products/slimflex-tag; https://www.hidglobal.com/documents/slimflex-tag-datasheet; https://www.hidglobal.com/documents/industry-and-logistics-solutions-brochure; https://www.hidglobal.com/documents/returnable-transport-rfid-solutions-brochure; https://www.hidglobal.com/documents/redefining-laptop-security-financial-institutions; https://www.hidglobal.com/documents/rfid-automation-and-manufacturing-executive-brief.

'143 patent, and Defendants have and will continue to encourage these acts with the specific intent to infringe the '143 patent. Further, Defendants provide information and technical support to their customers and other end-users, including website materials, instructions, datasheets, promotional materials and the like encouraging them to purchase and to use the Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '143 patent. Alternatively, Defendants have acted with willful blindness to these facts. On information and belief, Defendants know that there is a high probability that the use of the Accused Instrumentalities constitutes direct infringement of the '143 patent but took deliberate actions to avoid learning of these facts.

37. On information and belief, Defendants have been aware of the inventions described and claimed in the '143 patent since at least early 2018. At that time, VTT, through its representative Dr. Kaj Nummila, had discussions with and sent several follow-up emails to HID Global's Jean-Miguel Robadey and Omni-ID's Dr. George Daddis, about VTT's RFID-related patent families. The emails specifically identified the patent family stemming from PCT publication WO2006120287, which led to the issuance of the '143 patent in 2010.

38. On information and belief, Defendants have known that the using of the Accused Instrumentalities constitutes an act of direct infringement of the '143 patent. On information and belief, Defendants obtained this knowledge at least since early 2018. Moreover, Defendants had such knowledge upon service of VTT's April 2024 letter as demonstrated by the claim chart attached to the letter. To the extent Defendants did not have actual knowledge of their infringement, Defendants' lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Defendants therefore had knowledge that the using of the Accused

Instrumentalities by their customers and/or other end users infringes the '143 patent or Defendants were otherwise willfully blind to that fact.

39. On information and belief, Defendants' infringement of the '143 patent has been and continues to be willful and merits enhanced damages.

40. For example, Defendants have known of the '143 patent and their infringement of the '143 patent as described herein.

41. On information and belief, since knowing of the '143 patent and their infringement thereof, Defendants have not taken any affirmative steps to avoid infringing the '143 patent.

42. On information and belief, Defendants have made no attempt to design around the claims of the '143 patent.

43. On information and belief, Defendants have no reasonable basis for believing that the claims of the '143 patent are either invalid or not infringed by the Accused Instrumentalities.

44. VTT has been damaged as the result of Defendants' willful infringement.

45. On information and belief, Defendants will continue to infringe one or more claims of the '143 patent unless and until they are enjoined by this Court.

46. On information and belief, Defendants have caused and will continue to cause VTT irreparable injury and damage by infringing the '143 patent. VTT will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the claims of the '143 patent.

## JURY DEMAND

47. VTT requests a jury trial as to all issues that are triable by a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, VTT respectfully requests that this Court:

A. Enter judgment that Defendants have infringed one or more of the claims of the '143 patent;

B. Enter an order permanently enjoining Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the '143 patent;

C. Award VTT all appropriate damages for the infringement of the '143 patent, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D. Award VTT an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

E. Enter judgment that Defendants' infringement of the '143 patent has been deliberate and willful;

F. Treble the damages awarded to VTT under 35 U.S.C. § 284 by reason of Defendants' willful infringement of one or more claims of the '143 patent;

G. Declare this case to be "exceptional" under 35 U.S.C. § 285 and award VTT its attorneys' fees, expenses, and costs incurred in this action; and

H. Award VTT such other and further relief at law or in equity as the Court deems just and proper.

Dated: February 27, 2025

OF COUNSEL:

William R. Woodford
Todd S. Werner
Jason M. Zucchi
AVANTECH LAW, LLP
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Phone: (612) 895-2721
woodford@avantechlaw.com
werner@avantechlaw.com
zucchi@avantechlaw.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff VTT Technical Research Centre of Finland Ltd.*