IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VTT TECHNICAL RESEARCH CENTRE OF FINLAND LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 25-229-CFC |
| HID GLOBAL CORPORATION and OMNI-ID USA, INC., | ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE COMPLAINT</u>

Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
Lindsey M. Gellar (No. 7202)

OF COUNSEL:
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

Dated: April 21, 2025

SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
edibenedetto@shawkeller.com
lgellar@shawkeller.com
*Attorneys for HID Global Corporation and OMNI-ID USA, Inc.*

## **TABLE OF CONTENTS**

I.   NATURE OF THE PROCEEDINGS—VTT ASSERTS ITS PATENT
     AND FAILS TO STATE A CLAIM FOR RELIEF ........................................5

II.  SUMMARY OF THE ARGUMENT—VTT FAILS TO
     DEMONSTRATE INFRINGEMENT OF A KEY CLAIM TERMS,
     "PRIMARY" AND "SOURCE" WITH A FUNDAMENTAL
     MISUNDERSTANDING OF RFID TECHNOLOGY ...................................7

III. STATEMENT OF FACTS—THE COMPLAINT OMITS CRITICAL
     FACTS TO SUBSTANTIATE BROAD ALLEGATIONS ..........................10

     A.   The Parties: A Research Institute v. Solution Provider After a
          Failed Patent Sales Campaign.............................................................10

     B.   RFID Technology and the Asserted Patent: VTT Does Not
          Directly Address the Meaning of "Primary Source"...........................11

     C.   VTT Quietly Relaxes "Fold" to a "Fold Region," but Still
          Omits Critical Facts to Support Far-Reaching Allegations................13

     D.   VTT's Complaint Fails to Identify any OMNI Products, Despite
          Naming OMNI as a Defendant.............................................................17

     E.   VTT's Complaint Fails to Explain how Vague and Unsupported
          Facts Apply to Its Allegations .............................................................18

IV.  LEGAL STANDARDS—FEDERAL RULES REQUIRE STATING
     PROPER CLAIMS FOR PROPER PARTIES ...........................................19

     A.   Rule 12(b)(6)–The *Iqbal/Twombly* Pleading Standard Requires
          More Than Conclusory Statements ......................................................19

     B.   Pleading Direct Infringement Requires Identifying an Accused
          Product and Factual Allegations..........................................................19

     C.   Pleading Indirect Infringement Requires the Plaintiff to
          Plausibly Show the Defendants had Knowledge ................................20

V.   ARGUMENT—VTT'S COMPLAINT FAILS TO STATE A CLAIM
     UPON WHICH RELIEF MAY BE GRANTED ...........................................20

A.    VTT's Direct Infringement Allegations Should be Dismissed Because of Failure to Address Key Limitations of the '143 Patent ................................................................................20

    1.    VTT's Position that All Folds are "a primary *source* of the magnetic field," is an Unsupported Allegation ..................20

    2.    VTT's Claim Chart Points to the Fold Structure but Does Not Plead Whether the Fold Acts as a *Primary* Source ............22

    3.    It is Unreasonable for VTT to Assume that the Structures Disclosed in the '619 patent are Applicable to the Accused Products ......................................................................23

B.    VTT's Indirect Infringement Allegations Should be Dismissed Because of Multiple Independent Pleading Failures ..........................25

    1.    No Direct Infringement, No Indirect infringement ..................25

    2.    VTT Fails to Plead Pre-Suit Knowledge or Willful Blindness ................................................................................26

    3.    VTT Fails to Plead the Required Elements of Induced Infringement ..............................................................................28

C.    VTT Fails to State Any Infringement Claim Against OMNI ..............28

VI.    CONCLUSION—VTT FAILS TO STATE A CLAIM FOR RELIEF ..........29

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

35 U.S.C. § 271 ................................................................................15

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................. 15, 16, 22

*Bayer Healthcare LLC v. Baxalta Inc.*,
    2017 U.S. Dist. LEXIS 126904 (D. Del. Aug. 10, 2017) ...................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................. 15, 22

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*,
    2021 WL 65071 (D. Del. 2021) .................................... 23, 24

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .......................... 15, 18, 20, 25

*Cerebrum Sensor Techs., Inc. v. Revvo Techs., Inc.*,
    No. C.A. No. 24-245-JLH-SRF, 2025 WL 72110 (D. Del. Jan. 10, 2025) ........23

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005) ...................................... 15, 18

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ...........................................24

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ...........................................23

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,
    2020 WL 4365809 (D. Del. July 30, 2020) ................................. 16, 24

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ....................................................... 16, 23

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ...........................................................21

*Midwest Energy Emissions Corp. v. Vistra Energy Corp.*,
    2020 WL 3316056 (D. Del. June 18, 2020).......................................................22

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)..................................................... 22, 23, 24

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902, 906 (3d Cir. 1997) ............................................................. 16, 18

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
    C.A. No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)... 19, 25

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)..........................................................................21

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
    C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016)....................18

*Signode Indus. Grp. LLC v. Samuel, Son & Co.*,
    No. 2:24-CV-00080-JRG, 2024 WL 3543408 (E.D. Tex. July 25, 2024) ... 22, 23

*V-Formation, Inc. v. Benetton Grp. SpA*,
    401 F.3d 1307 (Fed. Cir. 2005) ................................................................ 15, 18

## I.    NATURE OF THE PROCEEDINGS—VTT ASSERTS ITS PATENT AND FAILS TO STATE A CLAIM FOR RELIEF

Plaintiff VTT Technical Research Centre of Finland LTD. ("VTT") filed a Complaint against Defendants HID Global Corporation ("HID") and OMNI-ID USA, Inc. ("OMNI") (collectively as the "Defendants") alleging infringement of the 7,724,143 patent ("'143 patent" or "Asserted Patent"). Pursuant to Rule 12(b)(6), Defendants move to dismiss VTT's claims for infringement on the '143 patent.

The '143 patent focuses on passive Radio-Frequency Identification (RFID) transponders, but more specifically, the antenna component. Pictured below from left to right is an annotated figure of claim 1 and a disclosed embodiment in the '143 patent.



| Claim 1 | '143 Embodiment |
|---|---|
| Antenna construction for a double-ended antenna circuit, which comprises a conductive ground place on a first surface, a transmission line on at least one second surface, the transmission line connected to the ground plane through a fold in the edge of the antenna construction, so that the fold acts as a primary source of a magnetic field, an insulation layer arranged between the first and the second surfaces, and an electronic component, in which there is a double-terminal antenna connector, connected to the antenna construction, wherein the electronic component is attached to the second surface of the antenna construction and connected from the first antenna terminal to the transmission line and from the second terminal to either a second transmission line or the fold. | |

'143 patent.

The element that the parties primarily discussed leading up to this suit is the "fold"—a critical limitation highlighted by the Examiner in the Reasons for Allowance. Ex-1. As shown above, the fold wraps around an edge of the insulating layer (yellow) and connects the ground plane (red) and second surface (blue) of the antenna. According to the claim, the fold is required to "act as a primary source of a magnetic field." The only time the word "primary" appears in the '143 patent specification was concluding "[t]he fold 1 acts as the primary source of the magnetic field." *Id.* 3:15-16. Based on VTT's correspondence and Complaint, VTT appears to

equate "the fold acting as the primary source of the magnetic field" to "the fold being located at where the magnetic field is the strongest." D.I. 1-2, at 4; Ex-4. However, this definition does not give any weight to the words "primary" or "source," as required by the claim. Despite HID's repeated requests for clarification, VTT sues without offering more clarity, thereby failing to state a claim.

## II.    SUMMARY OF THE ARGUMENT—VTT FAILS TO DEMONSTRATE INFRINGEMENT OF A KEY CLAIM TERMS, "PRIMARY" AND "SOURCE" WITH A FUNDAMENTAL MISUNDERSTANDING OF RFID TECHNOLOGY

This lawsuit is built on speculation, not science—grounded in shifting theories and a fundamental misunderstanding of the accused technology. Instead of discussing the merits of its patent with HID, VTT filed this lawsuit based on vague terminology, unsubstantiated allegations, and flawed reasoning. Considering VTT's failure to plausibly allege that HID's products satisfy a core claim limitation: that a "fold" in the antenna "acts as a primary source of a magnetic field," the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

The asserted claim requires that a "fold" acts as a primary *source* of a magnetic field. But VTT's claim chart (partially reproduced below) quietly substitutes a different term, asserting that "[t]he fold *region* acts a primary source of a magnetic field…" D.I. 1-2, at 3 (emphasis added). The phrase "fold region" appears nowhere in the patent. *Id.* The sleight of hand is telling. VTT cannot plausibly allege that the

7

fold itself—as required by the claim—is a primary source of the magnetic field. So instead, VTT broadens and blurs the term to capture something else entirely.



*See* D.I. 1-2 (partially reproduced).

HID, by contrast, provided detailed models showing the actual distribution of the magnetic field in the accused products, illustrating VTT's fundamental misunderstanding of HID's technology. The results of the model below are clear: the magnetic field is *weaker* around the fold than around the integrated circuit. This cuts against VTT's infringement claim.



VTT's Complaint offers no explanation—technical or otherwise—as to *how* the fold is the "primary" source. VTT's chart merely states "[t]his current loop

produces a localized magnetic dipole, which is a well-known source of a magnetic field." But a "well-known" source is not a "primary" source, as required by the claim. The claim does not recite whether the fold is *a* source of a magnetic field—it requires that it is a *primary* source. VTT offers nothing to bridge that critical gap. Without plausible allegations that the accused fold meets this limitation, VTT's direct infringement claim cannot survive.

Further, VTT's indirect infringement claims fail for three independent reasons, that VTT (1) does not sufficiently allege that any third party committed direct infringement, (2) fails to plead that Defendants had pre-suit knowledge of the Asserted Patent before April 2024, and (3) omits the required elements for induced infringement, such as specific intent. Specifically, VTT asserts that the Defendants had knowledge of the '143 patent through a general conversation about RFID technology at a conference. Alternatively, they assert that an email to HID containing a list of *patent families* somehow gives the Defendants knowledge of the '143 patent.

Notably, the claims against OMNI are wholly unsupported. The Complaint fails to identify a single OMNI product or even suggest how OMNI is connected to the HID-branded products. This failure, by itself, should be grounds to dismiss OMNI as a defendant.

Lastly, VTT accused seven products but failed to demonstrate how they share the alleged infringing qualities of the exemplary device cited in the representative

claim chart. Without providing any factual basis to show that the charted product is representative of the others, the court should dismiss claims on those accused products accordingly.

At its core, this case rests on a distortion of the claim language and a refusal to grapple with basic electromagnetic principles. HID has demonstrated through its computer models and basic electromagnetic principles that the fold cannot possibly be a primary source of the magnetic field, as the claim requires. The Court should dismiss VTT's Complaint because it does not plausibly allege infringement of at least one key claim limitation: that the fold "acts as a primary source of a magnetic field."

## III.    STATEMENT OF FACTS—THE COMPLAINT OMITS CRITICAL FACTS TO SUBSTANTIATE BROAD ALLEGATIONS

### A.    The Parties: A Research Institute v. Solution Provider After a Failed Patent Sales Campaign

VTT presents itself as a visionary research and innovation partner for companies and society and one of Europe's leading research institutions owned by the Finnish state. *See* VTT Research, *What is VTT?*, https://www.vttresearch.com/en/about-us/what-vtt (last visited April 18, 2025). As a research organization, VTT prides itself on having deep scientific knowledge and strong technological expertise and maintains a patent portfolio consisting of nearly 457 patent families. *Id*.

HID provides secure identity solutions, empowering millions of people in over 100 countries to access physical and digital spaces safely and efficiently. *See* HID Global, *HID Global Acquires Omni-ID to Extend Its RFID Leadership*, https://newsroom.hidglobal.com/hid-global-acquires-omni-id-extend-its-rfid-leadership (last visited April 15, 2025). In 2021, HID acquired OMNI to solidify its position in RFID technology. *Id*.

VTT approached HID and OMNI in 2018, before HID's acquisition of OMNI, as a part of "VTT RFID patent Sales campaign 2018." Ex-8. After six years of unsuccessfully selling the '143 patents, VTT sued HID and OMNI. *Id*.; D.I. 1.

### B.    RFID Technology and the Asserted Patent: VTT Does Not Directly Address the Meaning of "Primary Source"

VTT alleges infringement of the '143 patent titled "Antenna Construction, for Example for an RFID Transponder System." The '143 patent relates to improvements in RFID antenna design aimed at reducing RFID tag size and enhancing reading distance for passive RFID tags. '143 patent, 2:23-31.

RFID technology uses radio waves to transfer data between a tag and a reader for identification and tracking. *Id*. at 1:10-25. Passive RFID tags are battery-free, rely on magnetic induction from a reader's electromagnetic field to power the chip and transmit data. *Id*. at 1:20-22. A passive RFID tag generally has an antenna and a microchip, connected by transmission lines. *Id*. at Fig. 1. Antennas are configured to capture radio waves sent by a reader. *See* HID Global, *RFID FAQ*,

https://www.hidglobal.com/rfid-faq (last visited April 16, 2025). When a powered reader excites a passive tag, the electromagnetic field transmits power by induction through the antenna, just like how a wireless phone charger works. *See id*. The transmitted power then powers the microchip through transmission lines for further data exchange with the reader. *See id*.



*See* easyELAB, *How RFID Works? and How to Design RFID Chips?*, https://youtu.be/FwbWvjq_iiM?si=G_C5PY59LNCneQ2z&t=85 (last visited April 16, 2025).

Electrical current produces magnetic fields. *Id*. Therefore, in the absence of the energy field generated by a powered reader, the tag creates no magnetic field because there is no current flowing anywhere in it. *See id*. When the tag is interacting with a reader's magnetic field, the tag is charged and therefore creates a magnetic field of its own. *See id*. However, the tag's magnetic field highly depends on inputs

from the reader and the interactions between the reader and the tag, e.g., reader's electromagnetic field, distance, angle, environment, etc. *See* '143 patent, 13:45-56. Predicting a magnetic field based on tag structure alone is therefore an oversimplification of fundamental RFID theory.

### C.    VTT Quietly Relaxes "Fold" to a "Fold Region," but Still Omits Critical Facts to Support Far-Reaching Allegations

Before filing this lawsuit, VTT and HID exchanged correspondence concerning the '143 patent. D.I. 1, ¶¶26-27. A list of the correspondence between VTT and HID since 2024 is summarized below:

| No. | Date | Description |
|---|---|---|
| Ex-2 | April 3, 2024 | First VTT letter, with claim chart. |
| Ex-3 | May 3, 2024 | First HID letter responding to Ex-2. |
| Ex-4 | May 17, 2024 | Second VTT letter responding to Ex-3. |
| Ex-5 | June 18, 2024 | Second HID letter responding to Ex-4. |
| Ex-6 | July 18, 2024 | Third VTT letter responding to Ex-5. |
| Ex-7 | September 16, 2024 | VTT follow-up Email. |
| Ex-7 | September 23, 2024 | HID Email response |
| Ex-7 | September 30, 2024 | VTT Email response |

VTT supplied Defendants with a claim chart in its April 2024 letter (Ex-2), effectively including the same position as the claim chart in the Complaint.



13

Ex-2 at 12 (partially reproduced with annotations).

In response to the April VTT letter, HID requested clarification on how "the fold acts as a *primary* source of a magnetic field" limitation is met by any of the HID products. Ex-3. (Emphasis original.) VTT responded on May 17, 2024, asserting that the fold is a primary source due to the "magnetic dipole at the folded end of the antenna ('143 patent 3:10-16)" claiming well-known knowledge. Ex-4. To support this conclusion, VTT cited to Pozar's *Microwave Engineering* (Ex-9) and U.S. Patent No. 7,880,619 ("'619 patent"). *Id*.

However, as HID pointed out in a subsequent response, VTT did not provide any clarification on these critical limitations:

> Is VTT proposing that the fold acts as the primary real source of the magnetic source or as a primary fictitious source? Does "primary" signify that more than one source is present and the primary source is somehow more prevalent than the other(s)? If VTT is citing the fold as a primary real source, how has VTT determined that a loop of electric current or magnetic dipole is localized just to the fold?
>
> The reference in your letter to Figure 18b of HID's '619 patent seems inconsistent with the referenced Pozar definition. Figure 18b purports to show magnetic field strength, not magnetic or electric current density or electric charge density. It appears that VTT is conflating "a primary source of the magnetic field" with "an area of highest magnetic field strength.

Ex-5.

Even considering VTT's erroneous conflation of the terms, HID provided VTT with several models of its products to show that in no instance is the magnetic field strongest in the vicinity of the fold. *Id*. HID expressly stated that based on

several models (partially reproduced below), "the highest magnetic field strengths are always found in the vicinity of the matching loop by which each integrated circuit is mounted [and] the fold[s] include some of the weakest. . . ." *Id.* For example, the model below shows the magnetic strength of the accused product is weakest at the fold as demonstrated by a color-coded heat map of the magnetic field strength (e.g., from dark blue being the weakest magnetic field strength to red being the strongest). In fact, the magnetic field strength is not the strongest at any edge. *Id.* Therefore, even under VTT's problematic logic, HID showed VTT that the accused products cannot infringe.



Ex-5 (partially reproduced and annotated).

Rather than elaborating its allegations, VTT asked HID to "disclose the specific model parameters used to generate the images." Ex-6. Despite holding themselves out as "a pioneer in the development of RFID," this request underscores VTT's inability to substantiate its own claims. D.I. 1, ¶5. In that same letter, VTT again failed to meaningfully explain how its infringement theory satisfies the '143 patent's "primary source of magnetic field" limitation. *See id.* VTT simply repeated

that "it is well understood. . . a magnetic field that is greatest at the closed end (i.e., the fold.)." *See id.*

Despite HID's efforts to clarify the technology, VTT sued without addressing the core issue—how the "fold" serves as the "primary source of magnetic field." In the claim chart, VTT generally points to an actual fold in the claim chart and alleges that "the fold acts as a primary source of a magnetic field." D.I. 1-2, at 3-4. Then VTT nebulously changes the term and alleges that "[t]he fold *region* acts as a primary source of a magnetic field." *Id*. VTT does not explain why it relaxes this critical term.

VTT then further shifts its position without explanation. VTT alleges that the "continuous conductive loop" formed in the fold region is the "*primary* source of a magnetic field." *Id*. Next, instead of establishing this position, VTT simply states on the next line that the current loop ". . . is a well-known source of a magnetic field. . . " *Id.* VTT failed to show how a "well-known" source of a magnetic field equates to a "primary" source.



D.I. 1-2, 3-4 (Highlights added).

VTT references the '619 patent but fails to address how it supports the allegations. *Id*. VTT alleges that the '619 patent "describe[es] that the magnetic field is greatest close to the metal base portion at the fold regions." *Id.* The '619 patent, however, discloses a different structure. *See* '619 patent, e.g., Fig. 18b. VTT does not explain how the different structure in '619 patent is applicable to the Accused Product nor properly maps the claim elements "primary" or "source" to an HID product.

### D. VTT's Complaint Fails to Identify any OMNI Products, Despite Naming OMNI as a Defendant

Notably, VTT's Complaint fails to identify any OMNI product—despite naming OMNI as a defendant. All identified products bear HID trademarks and have no OMNI marks. D.I. 1, ¶32.

### E.    VTT's Complaint Fails to Explain how Vague and Unsupported Facts Apply to Its Allegations

In pleading indirect infringement, VTT failed to allege knowledge prior to the April 2024 letter. VTT claims Defendants had pre-suit knowledge based on a 2018 conversation at a conference and follow-up emails with a list of patent families. *Id.* at ¶22; Ex-8. However, the list only discusses patent families—it never directly mentions the '143 patent. After failing to sell the '143 patent, VTT waited six years before accusing Defendants of infringement. D.I. 1, ¶26.

| | |
|---|---|
| **VTT patent families on sale.** Contact kaj.nummila@vtt.fi for further information. | 9. Apr. 2018 |

Patent family 1

    PCT publication: WO2006120287
    Title: "Antenna construction, for example for an RFID transponder system"
    Priority application: FI20050507
    Granted patents: FI, US, CN and HK
    Pending applications: EP

Ex-8 (partially reproduced).

Moreover, the Complaint broadly claims that Defendants "have induced and continue to induce third parties . . . to use the Accused Instrumentalities." D.I. 1, ¶35. VTT points to Defendants allegedly providing general marketing materials. *Id.* at ¶36. But nowhere does VTT explain *how* these materials instruct third parties to infringe, nor does it identify a single instance of third-party use.

VTT also alleges willful blindness and 35 U.S.C. § 287 compliance but fails to identify any act of deliberate avoidance. *Id.*

## IV.    LEGAL STANDARDS—FEDERAL RULES REQUIRE STATING PROPER CLAIMS FOR PROPER PARTIES

### A.    Rule 12(b)(6)–The *Iqbal/Twombly* Pleading Standard Requires More Than Conclusory Statements

To state a patent claim of infringement upon which relief can be granted, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it contains sufficient facts to support a "reasonable inference" of liability. *Id.*

### B.    Pleading Direct Infringement Requires Identifying an Accused Product and Factual Allegations

For direct infringement, "one or more claims of the patent [must] read on the accused device . . ." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). A claim reads on the accused device if "each and every limitation set forth in a claim appear[s] in an accused product." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

### C.    Pleading Indirect Infringement Requires the Plaintiff to Plausibly Show the Defendants had Knowledge

To adequately plead inducement, the complaint must additionally plead facts plausibly showing that the accused infringer (1) "specifically intended another party to infringe the patent" and (2) "knew that the other party's acts constituted infringement." *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, 2020 WL 4365809, at *2 (D. Del. July 30, 2020). "Merely a 'known risk'" of infringement and "'deliberate indifference' to that risk," is not sufficient to plead willful blindness. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011).

## V.    ARGUMENT—VTT'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.    VTT's Direct Infringement Allegations Should be Dismissed Because of Failure to Address Key Limitations of the '143 Patent

#### 1.    VTT's Position that All Folds are "a primary *source* of the magnetic field," is an Unsupported Allegation

Because VTT's allegations regarding the primary source of the magnetic field are conclusory, the court should dismiss VTT's direct infringement claim. When evaluating a motion to dismiss under Rule 12(b)(6) the court should disregard unsupported allegations, "bald assertions," and "legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("court[s] need not credit a complaint's 'bald assertions' [on] a motion to dismiss.") (citations omitted.)

The "source" of a magnetic field is an electromagnetic current moving through a conductor. *See* Ex-9 at p.7. VTT asserts that "[t]he fold *region* acts a primary source of a magnetic field." D.I. 1-2, at 3. (Emphasis added.) But there is nothing inherent about a fold that acts as a *source* of a magnetic field. Ex-9 at p.59 ("[E]lectric charge density ρ is the ultimate source.") Even if the antenna were laid out flat, without folds, a magnetic field would still exist as long as electric current flows within. *See id*.

Moreover, VTT's characterization of the fold as an indeterminate *region* attempts to distort the claim language. *See* D.I. 1-2, at 3. But even under this indeterminate "region" characterization, VTT still does not explain how the fold region is a primary source. Ex-2. VTT cannot discuss this claim limitation without deviating from the primary source language. *Id*.

Furthermore, the Accused Products have transmission lines and integrated circuits creating a very tight loop away from the fold with higher current density. Ex-5. Thus, stronger magnetic field radiates from the integrated circuit mount— away from the fold. *Id*. The models provided by HID to VTT reflect and are consistent with fundamental electromagnetic principles. *See* Ex-5; Ex-9 at p.7.

Because VTT fails to plausibly allege "primary *source*", this Court should dismiss the direct infringement allegations of the '143 patent. *See Bot M8 LLC*, 4

F.4th at 1353; *Raindance Techs., Inc. v. 10x Genomics, Inc*., C.A. No. 15-152-RGA, 2016 WL 927143, at *2-3 (D. Del. Mar. 4, 2016).

### 2. VTT's Claim Chart Points to the Fold Structure but Does Not Plead Whether the Fold Acts as a *Primary* Source

The Court should dismiss VTT's direct infringement claim because VTT fails to sufficiently allege that the Accused Products include ". . . a fold in the edge of the antenna construction, so that the fold acts as a *primary* source of a magnetic field,"— a limitation that was deemed critical in allowing the '143 patent by the Examiner and the subject of pre-suit discussion between the parties.

For direct infringement, "one or more claims of the patent [must] read on the accused device . . ." *Cross Med. Prods., Inc.*, 424 F.3d, 1310. A claim reads on the accused device if "each and every limitation set forth in a claim appear[s] in an accused product." *V-Formation, Inc.*, 401 F.3d, 1312.

VTT misses the "primary" element in its complaint. In Exhibit A2 of the Complaint, VTT points to the HID tag and asserts that it "includes a fold in the edge of the antenna construction." D.I. 1-2 at 3. The claim chart states: "[t]he fold region acts as a primary source of a magnetic field." *Id*. But this allegation is conclusory and is a "bald assertion[]" that should be disregarded by court. *See Morse*, 132 F.3d at 906. Further, VTT asserts the fold "forms a continuous conductive loop" and that the loop "is a well-known source of a magnetic field in resonant structures." D.I. 1-2 at 4. However, simply being a "well-known" source does not equate to being a

"primary" source, as the claim requires. VTT provides no facts showing that other potential sources of the magnetic field either do not exist or are less significant. All that is left is VTT's boilerplate claim chart language. *See N. Star Innovations, Inc. v. Micron Tech., Inc.*, C.A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017) ("[A] patentee cannot . . . stat[e] (without more) that an accused product has []an element. . . There needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting . . . that it is so."). VTT should know about this logical disconnect from HID's pre-suit correspondence. *See*, e.g., Ex-3; Ex-5; Ex-7.[1]

Therefore, because VTT failed to support its claim that the fold acts as a "primary source," the Complaint should be dismissed.

### 3. It is Unreasonable for VTT to Assume that the Structures Disclosed in the '619 patent are Applicable to the Accused Products

VTT's reference to "well-known" electromagnetic principles is also conclusory and incorrect with respect to the accused products, because there must

---

[1] Likewise, all claims regarding non-charted products should be dismissed, as VTT fails to justify why the charted example is representative and does not sufficiently plead infringement.

be some factual allegations that articulate why it is plausible that the accused product infringes. *See Bot M8 LLC*, 4 F.4th at 1353.

VTT's claim chart cites to the '619 patent as "describing that the magnetic field is greatest close to the metal base portion at the fold regions," this general statement is misguided. *See* D.I. 1-2, at 4. First, the '143 patent concerns an antenna construction in which an electronic component is directly connected to the antenna structure. '143 patent, 2:10-14. However, the '619 patent has electrically-isolated electronic components. '619 patent, 8:59-66. This key difference completely changes the way the magnetic field interacts with a reader. *See* Ex-5. Second, VTT's reference to Fig. 18b of the '619 patent is even more problematic because it describes how the antenna interacts with extrinsic sources. *See* '619 patent, 2:60-3:9. Therefore, the fold in the '619 patent cannot be the "primary source" of the magnetic field. *See id*. Third, there is an obvious structural difference between the accused product and the structure described by the '619 patent: the accused product has a giant hole on the second surface where the integrated circuit is mounted.



D.I 1-2 (left); '619 patent at Fig. 2 (right).

VTT provides no rational basis to assume that the electromagnetic properties of the two would be similar. Therefore, reference the '619 patent provides no factual basis for a direct infringement claim.

### B.    VTT's Indirect Infringement Allegations Should be Dismissed Because of Multiple Independent Pleading Failures

The Court should dismiss VTT's indirect infringement allegations for three independent—and fatal—reasons. First, they collapse under VTT's deficient direct infringement allegations. Second, VTT fails to plead facts showing Defendants had pre-suit knowledge of the Asserted Patent prior to April 2024. Third, VTT fails to allege all elements required for induced infringement. Each flaw independently warrants dismissal.

### 1.    No Direct Infringement, No Indirect infringement

VTT's indirect infringement allegations cannot survive without a plausible allegation of direct infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 & n.3 (2014) (explaining that "inducement liability may arise if, but only if, there is direct infringement"); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (held that it is axiomatic that there can be no [induced] infringement without an underlying act of direct infringement, internal quotation marks omitted). Because there is no plausible direct infringement, as discussed above (Section V(A)), the indirect claims fall. *See Limelight Networks, Inc.*, 572 U.S., at 921 & n.3.

### 2.    VTT Fails to Plead Pre-Suit Knowledge or Willful Blindness

VTT's indirect infringement claims also fail because it does not plead facts showing that Defendants knew about the '143 patent before the April 2024 letter—or that they deliberately avoided such knowledge. A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly,* and *Iqbal. MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012); *Signode Indus. Grp. LLC v. Samuel, Son & Co.*, No. 2:24-CV-00080-JRG, 2024 WL 3543408, at *4 (E.D. Tex. July 25, 2024) (finding the absence of an allegation that the defendants took deliberate actions dispositive at the motion to dismiss stage).

VTT alleges that "Defendants have been aware of the inventions described and claimed in the '143 patent since at least early 2018" based on (1) a vague conversation at a conference, and (2) a "detailed" list of many patents sent via email. D.I. 1, ¶ 22. However, knowledge of a patent portfolio's existence is not enough to establish the knowledge requirement for claims of indirect infringement. Courts have repeatedly rejected such generalized assertions. *See Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, 2020 WL 3316056, at *7 (D. Del. June 18, 2020) (knowledge of a patent portfolio is insufficient); *Bayer Healthcare LLC v. Baxalta*

*Inc.*, 2017 U.S. Dist. LEXIS 126904, at *2-3 (D. Del. Aug. 10, 2017) (knowledge of parent application not enough); *Bench Walk Lighting LLC v. LG Innotek Co.*, Ltd., 2021 WL 65071, at *11–12 (D. Del. 2021), report and recommendation adopted, 2021 WL 1226427, at *4 (D. Del. Mar. 31, 2021) (finding a notice letter was insufficient where it did not identify all the asserted patents). The first instance of a specific notice regarding the '143 patent was in April 2024 when VTT alleges they sent the Defendants a letter—six years after VTT initially approached the Defendants. D.I. 1, ¶26.

VTT's alternative "willful blindness" argument is equally deficient. VTT parrots the *Global–Tech* legal standard—stating Defendants "acted with willful blindness" and "took deliberate actions to avoid learning" of the patent—but alleges no facts. D.I. 1, ¶ 36 and 38. Courts have continuously struck claims based on willful blindness that use this conclusory language in a motion to dismiss. *See MONEC*, 897 F. Supp. 2d at 235; *Cerebrum Sensor Techs., Inc. v. Revvo Techs., Inc.*, C.A. No. 24-245-JLH-SRF, 2025 WL 72110, at *4 (D. Del. Jan. 10, 2025), *report and recommendation adopted*, C.A. No. 24-245-JLH-SRF, 2025 WL 326647 (D. Del. Jan. 29, 2025); *Signode*, 2024 WL 3543408, at *4. Likewise, since knowledge or willful blindness is necessary for a claim of willful infringement, VTT's claims for enhanced damages under this theory also fail. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004).

### 3. VTT Fails to Plead the Required Elements of Induced Infringement

VTT fails to plead the key elements of induced infringement. For inducement, VTT must allege that Defendants "specifically intended another party to infringe the patent" and took affirmative steps to cause that result. *See Dynamic Data Techs., LLC*, 2020 WL 4365809, at *2; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part).

VTT alleges that the Defendants provide third parties with datasheets and instructions but does not allege how the cited material teaches infringement. D.I. 1, ¶ 35-37. This Court has held similar pleadings insufficient. *See Bench Walk Lighting*, 530 F. Supp. 3d at 490 (dismissing inducement claims because the complaint failed to allege *how* technical manuals and data sheets instructed third parties to infringe.); *MONEC*, 897 F. Supp. 2d at 234 ("[M]arketing activities of the Defendants do not, on their own, demonstrate that Defendants . . . possessed the specific intent to encourage another's infringement.").

### C. VTT Fails to State Any Infringement Claim Against OMNI

VTT fails to state any claim—direct or indirect—against OMNI because the Complaint does not identify a single accused product attributable to OMNI. All the accused products are identified as HID products, bearing HID trademarks. *See* D.I. 1, ¶32.

VTT's claims against OMNI rest entirely on bare legal conclusions that HID and OMNI "jointly developed" products or that HID "gained access" to OMNI-ID's RFID product line. *See id.*, ¶32, ¶9, ¶8. Such allegations say nothing about what products OMNI allegedly infringed with or how. Without an accused product, this is an insufficient pleading. *See Bot M8 LLC*, 4 F.4th at 1353; *see N. Star Innovations, Inc.*, 2017 WL 5501489, at *1. Thus, all claims against OMNI should be dismissed. *Id.*

## VI.    CONCLUSION—VTT FAILS TO STATE A CLAIM FOR RELIEF

The Complaint should be dismissed in its entirety. VTT's direct infringement claims fail to allege that Defendants practice the asserted claims. Without a viable theory of direct infringement, VTT's indirect infringement claims fall. But even if VTT's direct infringement claims could survive, its indirect infringement claims still fail for the reasons above.

                                        */s/ Emily S. DiBenedetto*
                                        Andrew E. Russell (No. 5382)
                                        Emily S. DiBenedetto (No. 6779)
                                        Lindsey M. Gellar (No. 7202)
OF COUNSEL:                             SHAW KELLER LLP
Lionel M. Lavenue                       I.M. Pei Building
FINNEGAN, HENDERSON, FARABOW,           1105 North Market Street, 12th Floor
  GARRETT & DUNNER LLP                  Wilmington, DE 19801
1875 Explorer Street, Suite 800         (302) 298-0700
Reston, VA 20190-6023                   arussell@shawkeller.com
(571) 203-2700                          edibenedetto@shawkeller.com
                                        lgellar@shawkeller.com
Dated: April 21, 2025                   *Attorneys for HID Global Corporation
                                        and OMNI-ID USA, Inc.*

## CERTIFICATE OF COMPLIANCE WITH
## <u>STANDING ORDER REGARDING BRIEFING</u>

Pursuant to the Court's November 10, 2022 Standing Order Regarding Briefing in All Cases, I certify that the font of this brief is Times New Roman, the type is 14-point, and the total word count is 4,996 words as calculated by the word-processing system used to prepare the filing.

*/s/ Emily S. DiBenedetto*
Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
edibenedetto@shawkeller.com
lgellar@shawkeller.com
*Attorneys for HID Global Corporation*
*and OMNI-ID USA, Inc.*

Dated: April 21, 2025

31