## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VTT TECHNICAL RESEARCH CENTRE OF FINLAND LTD, | Case No. 25-cv-229-CFC |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| HID GLOBAL CORPORATION, and OMNI-ID USA, INC., | |
| Defendants. | |

## PLAINTIFF VTT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(b)(6)

Dated: May 5, 2025

William R. Woodford (admitted *pro hac vice*)
Todd S. Werner (admitted *pro hac vice*)
Jason M. Zucchi (admitted *pro hac vice*)
AVANTECH LAW, LLP
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Phone: (612) 895-2721
woodford@avantechlaw.com
werner@avantechlaw.com
zucchi@avantechlaw.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
Phone: (302) 777-0338
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff VTT Technical Research Center of Finland LTD*

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT SUMMARY ....................................................................2

III.  STATEMENT OF FACTS .....................................................................3

      A. VTT Developed and Patented a Folded RFID Antenna Construction that
      Provides Significant Improvement Over Prior Designs. ..................................3

      B. VTT Informed Defendants of the '143 Patents and Their Infringement. ...6

      C. VTT's Complaint Alleges Infringement by Identifying Representative
      Products and Mapping Each Claim Element, Including the "Fold" and
      "Primary Source" Limitations. ........................................................8

IV.   LEGAL STANDARD ...........................................................................10

V.    ARGUMENT.......................................................................................11

      A. VTT's Complaint Plausibly Alleges Direct Infringement, Including for the
      "Primary Source" Limitation.............................................................11

            1.   VTT's Complaint Connects the Accused Products to the Claim
            Elements, Including the "Primary Source" Limitation. ......................11

            2.   Defendants' Arguments are Claim Construction and Factual
            Disputes that are Premature and Incorrect. ............................14

      B. There is No Basis to Dismiss VTT's Infringement Allegations Against
      Omni……………………………………………………………………18

      C.    VTT Plausibly Alleges Indirect Infringement of the '143 Patent. ......19

            1.   VTT's Complaint Alleges Direct Infringement by Third Parties.19

            2.   VTT Alleges Presuit Knowledge and Willful Blindness Based on
            Its 2024 Letters and Interactions in 2018.............................19

            3.   VTT Alleges that Defendants Specifically Intended to Induce
            Customers and End-Users to Induce the '143 Patent..........................21

      D.    Alternatively, VTT Requests Leave to Amend Its Complaint. ...........22

VI.   CONCLUSION....................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ........................................................... passim

*Bench Walk Lighting v. LG Innotek Co., LTD*
530 F. Supp. 3d 468 (D. Del. Mar. 31, 2021)...........................................17

*Bial-Portela & CA. S.A. v. Alkem Lab'ys Ltd.*,
No. CV 18-304-CFC-CJB, 2022 WL 4244989 (D. Del. Sept. 15, 2022)..................9

*Biotech v. Amgen, Inc.*,
No. CV 22-35-GBW, 2024 WL 1299930 (D. Del. Mar. 27, 2024) ............... 8, 9, 10

*EMC Corp. v. Zerto, Inc.*,
No. CV 12-956-GMS, 2014 WL 3809365 (D. Del. July 31, 2014)........................17

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .................................................................15

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .........................................................8

*MONEC Holding AG v. Motorola Mobility, Inc.*,
897 F. Supp. 2d 225 (D. Del. 2012) .................................................17

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ..................................................11, 12

*UTTO Inc. v. Metrotech Corp.*,
119 F.4th 984 (Fed. Cir. 2024) ....................................................11

**Statutes**

35 U.S.C. § 271(a) ...................................................................14

**Abbreviations**

| Abbreviation | Description |
|---|---|
| VTT | VTT Technical Research Centre of Finland |
| HID | HID Global Corporation |
| Omni-ID | Omni-ID USA, Inc. |
| Defendants | HID Global Corporation and Omni-ID USA, Inc. |
| RFID | Radio Frequency Identification |
| '143 Patent | U.S. Pat. No. 7,724,143 |
| '619 Patent | U.S. Pat. No. 7,880,619 |
| Br. | Brief In Support Defendants Motion to Dismiss the Complaint (D.I. 12) |

**Exhibits**

| Exhibit | Description |
|---|---|
| D.I. 1 | Plaintiff VTT's Complaint for Patent Infringement |
| D.I. 1-1 | U.S. Pat. No. 7,724,143 (the "'143 Patent") |
| D.I. 1-2 | Infringement Claim Chart for the IQ On-Metal 350 M730 RFID |
| D.I. 12-2 | VTT Letter to HID (April 3, 2024) |
| D.I. 12-3 | HID Letter to VTT (May 3, 2024) |
| D.I. 12-4 | VTT Letter to HID (May 17, 2024) |
| D.I. 12-5 | HID Letter to VTT and attached modelling (June 18, 2024) |
| D.I. 12-6 | VTT Letter to HID (July 18, 2024) |
| D.I. 12-7 | VTT and HID email correspondence (June 20, 2024-September 30, 2024) |
| D.I. 12-8 | VTT email to HID (May 18, 2018) |
| Ex. 10 | U.S. Pat. No. 7,880,619 |

*Exhibits 1-9 were filed as D.I. 12-1 through 12-9 and are attached to Defendants' Motion to Dismiss. *See* D.I. 12. Exhibit 10 is attached to the Declaration of William Woodford in Support of VTT's Opposition to Defendants' Motion to Dismiss, filed May 5, 2025.*

## I.    INTRODUCTION

Defendants' motion to dismiss is a summary judgment motion in disguise.  It asks the Court to resolve disputed claim construction issues, disregard well-pled factual allegations, and adopt Defendants' self-serving account of how their products work.  These arguments go to the merits and should be addressed after discovery—not on a motion to dismiss.

The '143 patent discloses a folded antenna architecture that reduces manufacturing costs by eliminating traditional components and improves RFID performance on metal surfaces—an innovation that VTT disclosed to Defendants in 2018.  The Accused Instrumentalities use the same folded antenna configuration. Now, having implemented the patented structure, Defendants contend that the claims do not cover what they copied.  They accuse VTT of a "fundamental misunderstanding" of electromagnetic theory, yet it is Defendants who mischaracterize the claims, the technology, and the physics. Their additional arguments regarding Omni-ID and induced infringement similarly misread both the Complaint and controlling law.

Accordingly, and for the reasons explained below, the motion should be denied.  If the Court determines that further clarification is warranted, VTT respectfully requests leave to amend.

## II.    ARGUMENT SUMMARY

1.    VTT's Complaint satisfies the pleading standard for direct infringement.  It provides a detailed mapping of claim 1 to a representative product and explains how the "fold" satisfies the "primary source of a magnetic field" limitation.  Defendants' objections are factual and claim construction disputes that are not appropriate at the pleading stage.  Regardless, as explained in detail below, Defendants' positions lack merit.

2.    Defendants' effort to dismiss Omni-ID is based on a misreading of the Complaint. VTT alleges that HID and Omni have jointly developed, manufactured, and sold the Accused Instrumentalities since HID's 2021 acquisition of Omni.  The Complaint alleges that both "Defendants" infringe.  That is sufficient under Rule 8.

3.    VTT also plausibly alleges indirect infringement.  The Complaint identifies direct infringement by end users and customers, alleges that Defendants knew of the '143 patent since at least April 2024, and pleads willful blindness back to 2018.  It further alleges specific intent to infringe, citing Defendants' distribution of datasheets, instructions, and promotional materials that teach infringing uses of the Accused Instrumentalities.  Unlike the case Defendants rely on, VTT cites working links and specific documents to support a plausible inference of intent.

## III.    STATEMENT OF FACTS

### A.    VTT Developed and Patented a Folded RFID Antenna Construction that Provides Significant Improvement Over Prior Designs.

VTT is a globally recognized research organization founded by the Finnish government and committed to advancing science and technology for the benefit of industry and society.  D.I. 1 ¶¶ 1-2.  Founded in 1942, VTT conducts nearly $200 million in research annually and employs more than 1,500 scientists and researchers across diverse fields such as artificial intelligence, sustainable energy, biotechnology, and wireless communications. *Id.* ¶¶ 2–4.  As a result of its extensive research activities, VTT holds over 1,400 patents, with another 500 patent applications pending globally.  *Id.* ¶ 5.  Each year, more than a thousand companies worldwide collaborate with VTT to support the development of innovative technologies.  *Id.* ¶ 4.

Among its many areas of innovation, VTT has conducted significant research in RFID technology.  *Id.* ¶ 5.  VTT's RFID-related research led to the patent-in-suit, U.S. Patent No. 7,724,143, granted in 2010, which addresses longstanding challenges in RFID antenna design—particularly the performance degradation of RFID transponders (also called RFID tags) when mounted on metal or plastic surfaces, and the high costs of then-existing manufacturing techniques.  *Id.* ¶¶ 10–13.

Before the inventions of the '143 patent, RFID transponders intended for use on metal surfaces were often based on planar inverted-F antenna (PIFA) or similar multi-layer designs. D.I. 1-1 at 1:56-2:6. These designs typically employed two separate conductive surfaces—one carrying the RFID chip and transmission line(s), and the other functioning as a ground plane. These two surfaces were separated with an insulator and electrically connected to each other using "vias"—small conductive elements that had to be precisely placed and separately attached. *Id.* at 1:64-2:3; D.I. 1 ¶ 12. This approach was expensive, time consuming, and limited the ability to manufacture thin, roll-to-roll RFID transponders intended for large-scale deployment. D.I. 1-1 at 1:59-63, 4:10-47; D.I. 1 ¶¶ 11–12.

The '143 patent claims a folded antenna structure that improves on this conventional design by eliminating the need for vias. In VTT's design, a single conductive antenna surface bearing the RFID circuit and transmission line(s) is attached to an insulating layer and then folded so that the conductive material faces itself, with the insulating layer sandwiched in between. D.I. 1-1 at 4:19-36, Fig. 3. The fold forms a junction between the conductive antenna surfaces, with one containing the RFID chip and transmission line(s) and the other serving as a ground plane—thereby replacing and eliminating the need for vias. *Id.* at Fig. 3, 2:7-14; D.I. 1 ¶ 14. This innovation simplifies manufacturing, reduces cost, and enables robust antenna performance across a variety of attachment surfaces. D.I. 1 ¶¶ 14-

4

15.  Figure 3 shows a side view of this folded antenna structure, with top views of the various configurations of an RFID circuit and transmission line(s) shown in Figures 2 and 4-6:





'143 Patent Fig. 2 (top view)          '143 Patent Fig. 3 (side view)

In the figures, element (1) corresponds to the fold, (3) corresponds to transmission line(s) on one surface of the folded antenna, (4) corresponds to the RFID circuit, (6) corresponds to the ground plane, and (7) refers to the insulation layer.  D.I. 1-1 at 3:8-32.  Defendants' products mirror the claimed antenna structure:




D.I. 1-2 at 4                    D.I. 1-2 at 5

The folded antenna structure claimed in the '143 patent functions as an open-ended resonator, a well-known configuration in electromagnetic theory. *See id.* at 3:10–16; Ex. 10 at Fig. 2. In such resonators, the closed end—corresponding to the fold—serves as the primary source of the magnetic field component, which, together with the electric field component, produce electromagnetic radiation. D.I. 1-1 at 3:10-16. The '143 patent confirms this behavior, stating that "the fold 1 acts as the primary source of the magnetic field." *Id.*

## B. VTT Informed Defendants of the '143 Patents and Their Infringement.

VTT first informed representatives of HID Global and Omni-ID about its patented RFID technology during the RFID Journal Live! Conference in April 2018. D.I. 1 ¶ 21. The following month, VTT followed up to both companies, reiterating its interest in licensing or sales opportunities and providing a list of VTT's RFID-related patent families, including PCT publication WO2006120287 from which the '143 patent issued. *Id.* Neither HID or Omni-ID responded. *Id.* A second follow-up to HID in June 2018 was acknowledged, with HID indicating that its counsel would review the patents, but no further communication was received. *Id.* ¶ 23. Omni never responded. *Id.* ¶ 24.

In August 2021, HID Global acquired Omni-ID and integrated Omni-ID's RFID antenna designs into HID's products. *Id.* ¶ 8. Despite VTT's prior outreach and identification of its patent rights, Defendants proceeded to develop and market

6

RFID products incorporating a folded antenna construction that mirrors the configuration claimed in the '143 patent. *Compare* D.I. 1-1 Figs. 2, 3, *with* D.I. 1-2 at 4-5; *see also* D.I. 1 ¶¶ 8–9, 25-26, 32. In April 2024, VTT formally notified HID and Omni-ID of their infringement in letters that referenced the prior 2018 communications and included a detailed claim chart mapping the '143 patent to representative HID products. D.I. 1 ¶ 26; D.I. 12-2. Over the following months, the parties exchanged letters regarding VTT's infringement allegations. D.I. 1 ¶ 27.

HID first raised the "primary source" issue at the center of its motion in a May 2024 letter, arguing that "magnetic field generation at a 'fold' is not a design criterion of any of the HID products." D.I. 12-3 at 2. VTT responded two weeks later with detailed technical and legal explanations, citing the '143 patent specification, and disclosure from HID's own '619 patent to clarify that the fold functions as the primary source of the magnetic field. D.I. 12-4 at 1–2. In June, HID replied by mischaracterizing VTT's position, suggesting that VTT had equated the term "primary source" with an "area of highest magnetic field strength"—an interpretation that HID itself introduced. D.I. 12-5 at 1. HID then claimed to refute its strawman construction with modeling that purports to show the fold is not the area of highest magnetic strength in Defendants' products. *Id*. at 2-3. HID's "requests for clarification" regarding its proposed construction, however, did not go unanswered. Br. at 7. VTT responded the following month, reaffirming its position

and requesting disclosure of HID's simulation parameters—including excitation source and boundary conditions—necessary for evaluating HID's position. D.I. 12-6. HID never responded.

Despite VTT's continued efforts, including a follow-up in September 2024, HID declined to provide any further explanation or modeling details, and instead summarily dismissed VTT's infringement position. Defendants' characterization of these pre-suit discussions omits significant details, including VTT's repeated efforts to clarify the meaning of the claim language and the technical basis for its infringement position. The legal and factual relevance of these communications is addressed further in the sections that follow.

HID's refusal to engage in further discussions—including its failure to provide requested information about its product models—ultimately led to this lawsuit.

## C. VTT's Complaint Alleges Infringement by Identifying Representative Products and Mapping Each Claim Element, Including the "Fold" and "Primary Source" Limitations.

VTT's Complaint sets forth detailed allegations of both direct and indirect infringement. *Id.* ¶¶ 31-46; D.I. 1-2. It alleges that Omni-ID developed, made, and sold infringing RFID tags before its acquisition by HID in 2021, that HID subsequently "marketed, sold, and deployed RFID solutions incorporating Omni-ID's technology, including products that infringe the '143 patent," and that

Defendants have "jointly developed, manufactured, and sold RFID products incorporating the technology at issue in this case." *Id.* ¶ 8-9, 36.

VTT also alleges that Defendants induce infringement by encouraging third party customers and other end-users to use the accused products in an infringing manner. *Id.* ¶¶ 35–36. As described above, the Complaint alleges that Defendants were aware of or willfully blind to the '143 patent and their infringement since at least 2018, and certainly by the time of VTT's 2024 notice letters. *Id.* ¶¶ 21-27, 37-38. VTT further identifies specific instructional materials, including instructions, datasheets, and promotional materials, that demonstrate Defendants' intent to induce infringement. *Id.* ¶ 36.

To support its allegations, the Complaint includes a detailed claim chart mapping each element of claim 1 of the '143 patent to an exemplary accused product, the IQ On-Metal 350 M730 RFID tag. D.I. 1-2 at 1–7. The chart uses annotated images, product datasheets, and technical references to show how each limitation is satisfied. *Id*. The chart also explains how the fold in the accused products act as the "primary source of a magnetic field," stating that the fold "forms a continuous conductive loop at the transition between the first and second surfaces of the antenna structure" to produce "a localized magnetic dipole, which is a well-known source of a magnetic field in resonant structures, such as in the IQ On-Metal 350 M730 RFID

tag." *Id.* at 3-4.  The Complaint also cites supporting evidence from HID's '619 patent.  D.I. 1-2 at 4.

## IV.   LEGAL STANDARD

At the pleading stage, "patentees need not prove their case" or provide evidentiary detail.  *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024).  A complaint states a claim for direct infringement if it contains "factual allegations that, **when taken as true**, articulate why it is ***plausible*** that the accused product infringes the patent claim."  *Id.* (citations omitted, emphasis added).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 39.  To plead induced infringement, "a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party's] acts constituted infringement."  *Id.* at 46 (cleaned up).  Such intent may be supported by circumstantial evidence.  *Id.*

On a motion to dismiss, all well-pleaded factual allegations are taken as true and all reasonable inferences are drawn in plaintiff's favor.  *See, e.g.*, *id.* at 39; *Biotech v. Amgen, Inc.*, No. CV 22-35-GBW, 2024 WL 1299930, at *1 (D. Del. Mar. 27, 2024).  The Court may consider the parties' correspondence and documents discussed therein without converting the motion into one for summary judgment

because they are explicitly relied upon in the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); D.I. 1 ¶¶ 26-27, 37-38.

## V.    ARGUMENT

### A.    VTT's Complaint Plausibly Alleges Direct Infringement, Including for the "Primary Source" Limitation.

Defendants seek dismissal of VTT's direct infringement allegations based on a single contested limitation—whether the "fold" in the accused RFID products "acts as a primary source of a magnetic field." Br. at 20-25. That argument fails because VTT's Complaint alleges sufficient facts to plausibly support a claim of direct infringement under Rule 8. In particular, the allegations concerning the "primary source" limitation are specific, technically grounded, and consistent with the governing legal standards. Defendants' true objections go not to the sufficiency of the allegations, but to their substance—raising factual and claim construction disputes that are incorrect and premature at the motion to dismiss stage.

#### 1.    VTT's Complaint Connects the Accused Products to the Claim Elements, Including the "Primary Source" Limitation.

VTT is not "required to plead infringement on an element-by-element basis," nor must it provide "[s]pecific facts . . . to support every allegation in the complaint." *AlexSam*, 119 F.4th 27 at 35, 39. Rather, a complaint is sufficient when it alleges facts "connecting the allegedly infringing product to the claim elements" such that it puts the alleged infringer "on notice of what activity is being accused and how that

activity infringes." *Biotech v. Amgen, Inc.*, No. CV 22-35-GBW, 2024 WL 1299930, at *3-4 (D. Del. Mar. 27, 2024) (internal quotations omitted) (denying a motion to dismiss even where one claim element was not expressly addressed because the complaint "connect[ed] elements from the [asserted] Patent to elements of [the] accused product."); *see also AlexSam*, 119 F.4th 27 at 35.

VTT more than satisfies this standard. The Complaint includes a detailed claim chart mapping each limitation of claim 1 to a representative accused product—the IQ On-Metal 350 M730 RFID Tag—and provides supporting material, including annotated images, datasheets, and references to publicly available technical sources.[1] D.I. 1-2 at 1–7. The Complaint also specifically identifies the "fold" structure in the Accused Instrumentalities and explains how it satisfies the "primary source" requirement: "The fold region acts as a primary source of a magnetic field because it forms a continuous conductive loop at the transition between the first and second surfaces of the antenna structure. This configuration induces a displacement current and supports a circulating surface current at the fold. This current loop produces a localized magnetic dipole, which is a well-known source of a magnetic field in

---

[1] Contrary to Defendants' assertion (at Br. 23, n.7), VTT expressly alleges that the IQ On-Metal 350 M730 RFID Tag is representative of the Accused Instrumentalities. D.I. 1 ¶ 36, D.I. 1-2 at 1. The Court should "decline to entertain this cursory argument made in passing." *See Bial-Portela & CA. S.A. v. Alkem Lab'ys Ltd.*, No. CV 18-304-CFC-CJB, 2022 WL 4244989, at *25 (D. Del. Sept. 15, 2022). Defendants cite no facts or law, and VTT should not be required to anticipate and refute every conceivable objection.

resonant structures, such as in the IQ On-Metal 350 M730 RFID tag." *Id.* at 3-4. This alone provides more than enough information to give rise to a plausible inference that Defendants infringe the '143 patent. *See AlexSam*, 119 F.4th 27, 42-45 (Fed. Cir. 2024); *Biotech*, 2024 WL 1299930 at *3.

But VTT's Complaint goes further by citing evidence to support VTT's infringement allegations relating to the "primary source" limitation. Specifically, VTT cites HID's own '619 patent, which describes a "resonant dielectric cavity" that forms an open-ended resonator. *E.g.*, Ex. 10 at 2:40-59, 11:21-27, 11:46-55. And like the '143 patent, the '619 patent confirms that the magnetic field is strongest near the closed (folded) end and weakest near the open end. *Id.* at 2:64-3:2, 4:26-36, 17:61-63. HID's '619 patent explains that the magnetic field strength is "greatest close to the metal base portion [(i.e., the fold)] and tends to be zero at the open end of the cavity." *Id.* at 17:61-63, Fig. 18b. These allegations are consistent with the '143 specification, which likewise describes the antenna as an open-ended resonator with distinct but complementary magnetic and electric field sources: "The antenna is made very small, but, because the source (the fold) 1 of the magnetic field and the source 2 of the electric field (the open end of the resonator) come close to each other, the situation affects the radiation impedance and the orientation of the power. ***The fold 1 acts as the primary source of the magnetic field***." D.I. 1-1 at 3:10–16 (emphasis added).

13

VTT's allegations are not conclusory—they are specific, technically reasoned, and supported by diagrams and references. While Defendants may dispute these allegations on the merits, they cannot reasonably claim they were not put on notice of VTT's infringement theory. That is all Rule 8 requires. *See AlexSam*, 119 F.4th at 42. Accordingly, Defendants' motion to dismiss VTT's direct infringement claim should be denied.

### 2.    Defendants' Arguments are Claim Construction and Factual Disputes that are Premature and Incorrect.

Defendants' motion sidesteps the applicable pleading standard and instead focuses on disputes over claim construction and antenna behavior—issues that are not appropriate for resolution on a motion to dismiss.

To portray VTT's allegations as conclusory, Defendants advance competing definitions for the phrase "primary source of a magnetic field." At one point, they argue that the "source" must be "where the magnetic field is the strongest"; elsewhere, they reduce the term to mean any flow of "current moving through a conductor." Br. at 7, 21. They also suggest that VTT failed to rule out other potential "primary sources of a magnetic field." *Id.* at 23. These are classic *Markman* issues that cannot be resolved on a motion to dismiss when they are in dispute. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 996–98 (Fed. Cir. 2024) (reversing dismissal where the patentee's interpretation of a claim term raised "at least a question" as to how a POSITA would read it); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d

1337, 1349–50 (Fed. Cir. 2018) (reversing dismissal where defendant's objections "boil[ed] down to objections to [plaintiff's] proposed claim construction," which was "not suitable for resolution on a motion to dismiss"). Moreover, none of Defendants' proposed constructions are supported by the disclosures of the '143 patent or fundamental electromagnetic principles.

The folded RFID antenna structure of the '143 patent is designed to radiate energy to an RFID reader at some distance. *E.g.*, D.I. 1-1 at 1:26-34, 1:48-56, 2:24-26, 3:10-16. For this reason, the '143 patent repeatedly emphasizes far-field radiation characteristics, including long read distances, radiation impedance, and radiation patterns. *See id.* at 3:10–22, 3:58-67, 5:16–21. As explained in the Complaint, the fold completes a conductive loop between two antenna surfaces, supporting the flow of circulating surface currents and displacement currents. D.I. 1-2 at 3-4. This loop behaves as a magnetic dipole, generating the magnetic component of the antenna's radiated electromagnetic field—the primary source of the antenna's magnetic field. *Id.*; D.I. 1-1 at 3:10-16, 3:23-27, 5:20-21. In short, the fold is not just a structural "bend"—it is a radiating element.

Defendants' focus on current density near the IC mount misunderstands this radiative context and confuses near-field behavior with far-field radiation. Br. at 14-15, 21. While current density in a "tight loop" near the IC mount may exhibit localized fields, they decay rapidly with distance and contribute little or nothing to

15

radiated energy. In contrast, larger structural features—like the fold—support circulating currents that generate magnetic field components capable of radiating effectively into space. Even if Defendants' simulations show magnetic intensity around the IC, that does not displace the fold as the "primary source" of the magnetic field component that radiates from the RFID tag. Defendants' further argument—that "the 'source' of a magnetic field is an electromagnetic current moving through a conductor" and thus "even if the antenna were laid out flat . . . a magnetic field would still exist"—fails for the same reason. Br. at 12-13, 20. The "fold" structure concentrates received energy and facilitates the formation of a resonant current distribution that produces the magnetic field component of the emitted radiation. *See* D.I. 1-1 at 3:10-16, Fig. 2. Defendants' focus on non-radiative current paths ignores the relevant electromagnetic behavior and mischaracterizes the function of the claimed structure.

VTT, however, is not required to prove these facts in its Complaint. *See AlexSam*, 119 F.4th at 42-44 (holding that a patentee "need not prove its case at the pleading stage" and must only allege facts that plausibly support a claim of infringement); *Nalco*, 883 F.3d at 1349–50 (reversing dismissal where defendant's noninfringement theory "rel[ied] on a factual finding" that contradicted the complaint's allegations). The '143 patent describes an open-ended resonator in which the fold functions as the primary source of the radiating magnetic field. D.I.

1-1 at 3:10-16.   VTT sufficiently alleges the accused products implement this structure.   D.I. 1-2 at 3-4.   Defendants' modeling (Br. at 14-15, 21, 23) can be evaluated during discovery, where Defendants can provide the simulation parameters—such as excitation source, material properties, or boundary conditions—that HID previously withheld when VTT requested them.   *See* D.I. 12-6 at 1-2; D.I. 12-7 at 1.   The simulations cited in the motion show only surface-level field distributions and do not address the radiated far-field energy that governs antenna performance.

Defendants' argument that VTT's reference to a "fold region" rather than a "fold" "attempts to distort the claim language" is similarly unavailing.   Br. at 7-8, 16, 21.   The claim chart's reference to a "fold region" merely reflects that the fact that the "fold" spans a measurable portion of the structure—consistent with how the '143 patent depicts it in multiple figures.   *See, e.g.*, D.I. 1-1 at Figs. 2, 3.

Defendants' efforts to distance themselves from the '619 patent are equally flawed.   Br. at 24.   First, whether the component in the '619 patent is isolated or directly connected is immaterial to magnetic field generation.   In both the '143 and '619 patents, current flows through the fold, producing a magnetic dipole that serves as the radiating source.   Second, Figure 18b of the '619 patent is relevant because it shows magnetic field concentration at the fold—whether in coupling or transmission mode.   Ex.10 at 17:61-63.   That concentration results from the geometry and current

17

path, not the presence or absence of a reader.  Third, Defendants' reference to a "hole" near the IC in the accused products does not displace the fold as the magnetic field source, as the fold remains electrically and functionally dominant in the open-ended resonator structure.  *See id.*  Moreover, while the '619 patent reinforces VTT's theory, VTT's Complaint plausibly alleges infringement without it—through detailed claim mapping, supported by diagrams, datasheets, and accepted electromagnetic theory.  D.I. 1-2 at 1–7; D.I. 1 ¶ 36.

In short, Defendants cannot dispute that the Complaint put them on notice of VTT's infringement theory.  Defendants' arguments relating to claim construction and their products are premature, incorrect, and do not provide any legal basis to dismiss VTT's direct infringement claims.

### B.  There is No Basis to Dismiss VTT's Infringement Allegations Against Omni.

Defendants' argument that Omni-ID should be dismissed mischaracterizes the pleadings and ignores the plausible inferences that arise from the corporate relationship between Omni-ID and HID.  Br. at 28-29.  VTT's Complaint alleges that "***Defendants*** have directly infringed and continue to directly infringe one or more claims of the '143 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported" each of the seven Accused Instrumentalities.  D.I. 1 ¶ 32 (emphasis added).  Likewise, VTT's allegations in Count I and the infringement claim chart are

all directed at "Defendants" (plural), which includes both HID and Omni-ID.  *Id.* ¶¶ 32-46; D.I. 1-2.

Defendants' focus on trademarks associated with the Accused Instrumentalities misses the point.  VTT alleges that, since Omni-ID's acquisition by HID in August 2021, "HID Global and Omni-ID have ***jointly developed, manufactured, and sold*** RFID products incorporating the technology at issue in this case."  D.I. 1-2 ¶ 9.  These allegations are more than sufficient under Rule 8 and 35 U.S.C. § 271(a) to support a plausible inference that Omni-ID is involved in the acts of infringement.

### C.    VTT Plausibly Alleges Indirect Infringement of the '143 Patent.

#### 1.    VTT's Complaint Alleges Direct Infringement by Third Parties.

Defendants wrongly argue that VTT fails to allege indirect infringement because the Complaint lacks a plausible allegation of direct infringement.  Br. at 25.  Defendants are incorrect—VTT's Complaint states a claim for direct infringement.  *See* Section V.A.

#### 2.    VTT Alleges Presuit Knowledge and Willful Blindness Based on Its 2024 Letters and Interactions in 2018.

Defendants are also incorrect that the Complaint fails to plausibly allege presuit knowledge of the '143 patent.  Br. at 26-27.  Defendants admit that VTT provided ***"specific notice regarding the '143 patent"*** in its April 2024 letter.  *Id.* at 27.  That letter informed Defendants that several of their RFID products infringe the

'143 patent and attached detailed claim charts comparing Claim 1 to representative products. D.I. 1 ¶¶ 26, 38; D.I. 12-2. As a result, there is no dispute that Defendants had presuit knowledge of the '143 patent and their infringement. *See AlexSam*, 119 F.4th at 46 (reversing dismissal of induced infringement where presuit notice letter provided knowledge of the asserted patent.)

In addition to actual knowledge, VTT also pleads sufficient facts to support a plausible inference that Defendants were willfully blind to the '143 patent and their infringement as early as 2018. A claim of willful blindness requires allegations that the defendant: (1) "subjectively believes that there is a high probability that a fact exists," and (2) took "deliberate actions to avoid learning of that fact." *See Glob.- Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011). Here, VTT alleges that it informed Defendants about its patented antenna technology at an April 2018 conference and later sent a list of patent families covering that technology— including PCT publication WO2006120287, which issued as the '143 patent. D.I. 1 ¶ 22. Omni-ID never responded. *Id*. ¶¶ 22-23. HID responded briefly in June to state it would review the portfolio with counsel but never followed up. D.I. 1 ¶ 23.

These facts give rise to a plausible inference that Defendants believed that there was a high probability that they infringed the '143 patent. It is equally plausible that Defendants deliberately ignored VTT's communications or refused to investigate further to avoid learning of their infringement. With respect to HID, for

example, it is also plausible that HID reversed course and chose not to review the patents with counsel, or that it was advised not to do so under the mistaken belief that avoiding review might limit exposure for indirect or willful infringement. D.I. 1 ¶¶ 21-25.

Taken together, VTT's allegations establish both actual knowledge based on its 2024 letter and willful blindness based on Defendants' conduct after VTT's 2018 outreach. These facts are more than sufficient to plausibly allege knowledge for indirect infringement.

### 3. VTT Alleges that Defendants Specifically Intended to Induce Customers and End-Users to Induce the '143 Patent.

Defendants arguments relating to specific intent misstate the legal standard and misread the case law. *See* Br. at 28. To plausibly allege specific intent, VTT must allege that the defendant knew of the patent, knew that its customers infringe, and encouraged that infringement by citing materials instructing third parties on the use of the accused products. *See AlexSam*, 119 F.4th at 46-47 (finding specific intent plausibly pled where the complaint cited "information brochures, promotional material, and contact information" on the defendant's website that encouraged infringing use). However, VTT need not dissect those materials in its Complaint. *Id*.

Defendants' reliance on *Bench Walk Lighting* and *MONEC Holding* is misplaced. In *Bench Walk Lighting v. LG Innotek Co., LTD*, the Court dismissed

induced infringement allegations because the Complaint cited a broken link to the encouraging materials cited in the patentee's complaint and "so the Court and Defendants cannot access it to see what Plaintiff is talking about."  530 F. Supp. 3d 468, 490 (D. Del. Mar. 31, 2021).  In other words, if the links had not been broken, the Court would have reviewed the cited materials directly.  *Id*.  The plaintiff in *MONEC Holding AG v. Motorola Mobility, Inc*., 897 F. Supp. 2d 225, 234 (D. Del. 2012) did not cite any materials at all.

None of the eighteen links to the datasheets and instructions cited in VTT's Complaint are broken.  D.I. ¶ 36.  Accordingly, VTT adequately alleges that Defendants specifically intend and encourage their customers and end-users to infringe.  D.I. 1 ¶¶ 21-28, 35-38.

## D.    Alternatively, VTT Requests Leave to Amend Its Complaint.

While VTT believes its Complaint fully satisfies the pleading requirements, VTT respectfully requests leave to amend should the Court conclude that additional detail is warranted.  Leave to amend should be "freely given" unless there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility of amendment.  *E.g.*, *EMC Corp. v. Zerto, Inc*., No. CV 12-956-GMS, 2014 WL 3809365, at *2 (D. Del. July 31, 2014).  If the Court determines that further allegations are necessary, VTT is prepared to amend to provide additional detail.

## VI.    CONCLUSION

For the foregoing reasons, VTT respectfully requests that the Court deny Defendants' Motion to Dismiss or, in the alternative, allow VTT to amend its Complaint.

Dated: May 5, 2025                    Respectfully submitted,

                                      FARNAN LLP

                          By:    /s/ Michael J. Farnan
                                 Brian E. Farnan (Bar No. 4089)
                                 Michael J. Farnan (Bar No. 5165)
                                 FARNAN LLP
                                 919 North Market Street
                                 12th Floor
                                 Wilmington, DE 19801
                                 Phone: (302) 777-0300
                                 bfarnan@farnanlaw.com
                                 mfarnan@farnanlaw.com

                                 William R. Woodford (Admitted *pro hac vice*)
                                 Todd S. Werner (Admitted *pro hac vice*)
                                 Jason M. Zucchi (Admitted *pro hac vice*)
                                 AVANTECH LAW, LLP
                                 80 South 8th Street, Suite 900
                                 Minneapolis, MN 55402
                                 Phone: (612) 895-2721
                                 woodford@avantechlaw.com
                                 werner@avantechlaw.com
                                 zucchi@avantechlaw.com

                                 *Attorneys for Plaintiff VTT Technical Research
                                 Center of Finland LTD*

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order regarding Briefing in All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,996 words, excluding the case caption, signature block, table of contents, table of authorities, table of abbreviations, and table of exhibits.

 /s/ Michael J. Farnan
Michael J Farnan (Bar No. 5165)

Dated: May 5, 2025