IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VTT TECHNICAL RESEARCH CENTRE OF FINLAND LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C.A. No. 25-229-JCB |
| HID GLOBAL CORPORATION and OMNI-ID USA, INC., | ) ) ) ) |
| Defendants. | ) ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
<u>**MOTION TO DISMISS**</u>

OF COUNSEL:
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700

Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for HID Global Corporation and OMNI-ID USA, Inc.*

Dated: May 12, 2025

## **TABLE OF CONTENTS**

I. INTRODUCTION—VTT'S RESPONSE FAILS TO CURE THE DEFICIENCIES IN ITS COMPLAINT AND DISMISSAL IS STILL WARRANTED AND NEEDED .................................................................................................. 1

II. VTT MISSTATES THE "PRIMARY SOURCE" DISCUSSION IN THE PARTIES' PRE-SUIT COMMUNICATIONS AND MISAPPLIES *AlexSam* ................ 2

    A. There Is No Confusion Over the Meaning of Critical Limitation, "a Primary Source of a Magnetic Field"–There Is Only a Failure of Notice Pleading ................................................................................................... 2

    B. The Parties' Pre-Suit Communications Clarify that VTT Has No Basis to Allege Satisfaction of the Critical Limitation, "a Primary Source of a Magnetic Field" – Again, Highlighting a Failure of Notice Pleading .................... 3

    C. *AlexSam* Does Not Save VTT's Failure of Notice Pleading, as VTT Omits a Critical Element in Pleading, Which Is Not Allowed by the Federal Circuit ........................................................................................................... 5

    D. In Its Opposition, VTT Raises New Infringement Theories for the First Time, Yet It Still Ignores the Crucial "Primary Source of a Magnetic Field" Limitation .................................................................................................. 6

III. DISMISSAL IS ALSO PROPER BECAUSE VTT FAILS TO ASSERT INDIRECT INFRINGEMENT, WITH CONCLUSORY ALLEGATIONS AND/OR ALLEGATIONS BASED SOLELY ON ALLEGED "PLAUSIBLE INFERENCES" .............................................................................................................. 7

    A. VTT Fails to Plead Indirect Infringement (VTT Cannot Show Intent) .................. 7

        1. VTT Fails to Plead Actual Knowledge of '143 Patent Since 2018 ............. 7

        2. VTT Fails to Plead That Defendants Induced Third Parties to Infringe as Defendants Do Not Have the Specific Intent to Infringe ......... 8

    B. VTT's Infringement Allegations as to Omni-ID Should Be Dismissed as Based on "Plausible Inferences" and Are Therefore Conclusory and Unsupported ............................................................................................... 9

IV. VTT'S REQUEST FOR LEAVE TO AMEND (TO SUBMIT AN AMENDED COMPLAINT) SHOULD BE DENIED, AS ANY ATTEMPT TO AMEND ITS COMPLAINT WOULD BE FUTILE ............................................................................. 10

V. CONCLUSION—DISMISSAL IS WARRANTED AND NEEDED .............................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*AlexSam Inc. v. Aetna, Inc.*, 119 F.4th 27 (Fed. Cir. 2024) ...................................................... 1, 5, 6

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*,
  530 F.Supp.3d 468 (D. Del. 2021) ........................................................................................... 8, 9

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) .......................................... 5, 6, 7

*Com. Of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) ............................ 6

*CyboEnergy, Inc. v. Altenergy Power Sys. USA*,
  2023 WL 5968000 (W.D. Tex. Sept. 13, 2023) .......................................................................... 10

*EMC Corp. v. Zerto, Inc.*, 2014 WL 3809365 (D. Del. July 31, 2014) ......................................... 10

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
  388 F.Supp.2d 426 (D. Del. 2005) ............................................................................................... 9

*Helios Streaming, LLC v. Vudu, Inc.*, 2020 WL 2332045 (D. Del. May 11, 2020) ........................ 8

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ....................................... 3

*Kirsch Research and Development, LLC v. Tarco Specialty Products, Inc.*,
  2021 WL 4555802 (W.D. Tex. Oct. 4, 2021) .............................................................................. 8

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F.Supp.2d 225 (D. Del. 2012) ........................................................................................... 8, 9

*Ottah v. Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018) ............................................................... 10

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................. 9

**I.   INTRODUCTION—VTT'S RESPONSE FAILS TO CURE THE DEFICIENCIES IN ITS COMPLAINT AND DISMISSAL IS STILL WARRANTED AND NEEDED**

The primary issue in the pending Motion to Dismiss involves VTT's failure to plausibly allege that the Accused Instrumentalities satisfy a core claim limitation, that is, that a "fold" structure within a radio frequency tag "acts as a primary source of a magnetic field." Defendants moved to dismiss because VTT's Complaint has not pleaded how the mere existence of the "fold" structure leads to it acting as a "***primary source*** of a magnetic field." For this reason alone, dismissal is proper. Whether VTT sufficiently pled the critical element that the claimed "fold" is the "*primary source* of a magnetic field" is a dispositive issue that is appropriately resolved at the pleading stage.

In its Opposition brief, VTT complains that the Motion to Dismiss is a "summary judgment in disguise" and that it seeks to resolve "disputed claim construction issues." Not so. Instead, the Motion seeks to resolve a single issue—if the Complaint provides any basis to allege that the Accused Instrumentalities contain a "fold" acting as a "primary source of a magnetic field," as claimed. For notice pleading, VTT relies on a single case—*AlexSam v. Aetna.*, However, VTT fails to recognize that each case depends on the technology involved, and VTT fails to acknowledge that an element cannot simply be omitted, when it is ***material to proving infringement***. There is no basis to assert what a "primary source of a magnetic field" means, and VTT cannot escape a crucial fact—that Defendants provided data to show that the Accused Instrumentalities cannot satisfy the limitation at issue, and VTT has not alleged anything showing otherwise:



D.I. 12 at 8, 15. VTT had in its possession specific test results that showed that the primary source of the magnetic field of the accused chips was around the circuit, and not at the fold (and indeed that the fold had *a demonstrable lack of magnetic field*), but VTT ignored this data in filing its Complaint. Without at least such an allegation on this point, notice pleading has not been satisfied.

Because the Accused Instrumentalities cannot directly infringe, VTT's indirect infringement arguments similarly fail. The indirect infringement allegations fail also because VTT cannot prove specific intent to infringe. Also, VTT's allegations directed to Omni-ID should be dismissed as they are solely based on "plausible inferences" and are therefore conclusory.

In the Opposition brief, VTT tacitly admits that its infringement allegations are deficient, and concludes its response by seeking leave to amend its Complaint. But any amendment would be futile, because no revisions could or would cure the numerous deficiencies in notice pleading.

## II. VTT MISSTATES THE "PRIMARY SOURCE" DISCUSSION IN THE PARTIES' PRE-SUIT COMMUNICATIONS AND MISAPPLIES *ALEXSAM*

### A. There Is No Confusion Over the Meaning of Critical Limitation, "a Primary Source of a Magnetic Field"–There Is Only a Failure of Notice Pleading

First, in its Opposition, VTT attempts to avoid its failure to plausibly allege that the Accused Instrumentalities satisfy the "a primary source of a magnetic field" by alleging confusion. VTT claims that there is confusion among the parties over the issue of "primary source of a magnetic field" versus the "area of highest magnetic field strength," incorrectly accusing HID of introducing and equating the terms. D.I. 16 at 7. This is incorrect. Only VTT—not HID—has confused the terms. VTT initially proposed its interpretation of "primary source of a magnetic field" in a May 17, 2024, letter. D.I. 12-4. In an attempt to show that HID knew what "primary source of magnetic field" means (and that the Accused Instrumentalities allegedly infringe), VTT cited HID's patent, U.S. Patent No. 7,880,619 (the "'619 patent"), with a specification discussing magnetic fields. D.I. 17-10, 17:61-63. By citing to that patent, VTT then concluded, based on the

'619 patent's specification, that the Accused Instrumentalities meet the claimed "primary source" limitation. D.I. 12-4. But this contention is conclusory and unsupported by the record.

HID did engage in a good-will effort to clarify VTT's view of the "primary source of magnetic field" limitation. In a June 18, 2024, letter, HID explicitly asked for more information:

> **Is VTT proposing** that the fold acts as the primary real source of the magnetic source **or** as a primary fictitious source? **Does "primary" signify** that more than one source is present and the primary source is somehow more prevalent than the other(s)? **If** VTT is citing the fold as a primary real source, **how has VTT determined** that a loop of electric current or magnetic dipole is localized just to the fold? … **It appears that VTT is conflating** "a primary source of the magnetic field" with "an area of highest magnetic field strength. . ."

D.I. 12-5. (Emphasis added.) But, in the June 18 letter—and in its opening brief for the Motion to Dismiss—HID pointed out that, while it "remains unclear [whether] a fold in any of the Accused Instrumentalities acts 'as a primary source of the magnetic field,'" simulations show that HID's magnetic field is the weakest around the claimed "fold" and therefore cannot infringe. D.I. 12 at 14-15; D.I. 12-5. HID thus did not inject any conflicting interpretation of "primary source." *Id.*

VTT attempts to suggest a claim construction issue, but the issue is notice pleading: the limitation requires a "primary source," which VTT has not pleaded. Because VTT cannot explain what the critical term "primary source" means, VTT's pleading is insufficient; its direct infringement claims should be dismissed.

      **B.**    **The Parties' Pre-Suit Communications Clarify that VTT Has No Basis to Allege Satisfaction of the Critical Limitation, "a Primary Source of a Magnetic Field" – Again, Highlighting a Failure of Notice Pleading**

Second, in its Opposition, VTT complains that the arguments in the Motion to Dismiss are premature. D.I. 16 at 14. Yet, VTT acknowledges that the Court may consider correspondence and documents discussed therein without converting a motion to dismiss into a motion for summary judgment. D.I. 16 at 11 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). VTT cannot have it both ways. The Motion to Dismiss presents arguments and

3

correspondence directly related to the deficiencies in VTT's Complaint, on the issue of notice pleading, that is, VTT has not and cannot allege that that the Accused Instrumentalities contain a "fold" acting as a "primary source of a magnetic field." Without such, VTT fails notice pleading.

VTT misunderstands the purpose of citing to the correspondence of the parties, discussing the critical "primary source of a magnetic field" claim term. Given that the parties previously exchanged letters discussing this limitation in detail, and given that simulation data explaining why the critical limitation was exchanged (and of record, see D.I. 12 at 13-16,), the opening brief cited these points. VTT objects, claiming either that the Motion to Dismiss is either (1) "a motion for summary judgment in disguise" or (2) a "claim construction dispute," or perhaps both. D.I. 16 at 1, 11. But, neither one or both of these points address the glaring failure of notice pleading.

The Motion cites the claim limitation as a failure of notice pleading, not as a basis for summary judgement nor as a basis for a dispute over claim construction, as VTT posits. To the contrary, the letter exchanges among the parties show that VTT failed to state a claim for direct infringement–and thus, failed at notice pleading. D.I. 12 at 14-15. Further, even using VTT's interpretation of "primary source," VTT still has no plausible infringement theory. *Id.* The Motion to Dismiss illustrates—by providing detailed models showing the actual distribution of the magnetic field in the Accused Instrumentalities—the magnetic field is *weaker* around the "fold" than around the integrated circuit. D.I. 12 at 8. The minimal magnetic field at the fold completely undermines VTT's infringement arguments under any claim construction. *Id.*



*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021) requires identifying critical elements of each patent before determining whether infringement allegations are sufficient. Therefore, a discussion on a pleading's sufficiency necessarily involves analyzing what the critical claim term actually means.

For the foregoing reasons, VTT fails to adequately plead direct infringement regardless of how the term "primary source of magnetic field" is interpreted, because "primary source" is either not alleged at all, or it is nowhere near the "fold" in any of the Accused Instrumentalities.

### C.  *AlexSam* Does Not Save VTT's Failure of Notice Pleading, as VTT Omits a Critical Element in Pleading, Which Is Not Allowed by the Federal Circuit

Third, in its Opposition, VTT asserts that it is not required to plead infringement on an element-by-element basis, relying on *AlexSam, Inc. v. Aetna, Inc.*, 119 F. 4th 27 (Fed. Cir. 2024); D.I. 16 at 11. Although *AlexSam* indeed addresses notice pleading, and "plead[ing] infringement on an element-by-element basis[,]" the Federal Circuit has also described that the detail required in a pleading depends upon the technology and the complexity/materiality of an element to practicing the asserted claim. *See AlexSam*, 119 F.4th at 42 (citing *Bot M8*, 4 F.4th at 1352-53).

Here, the "primary source of magnetic field" limitation, as recited in claim 1 of the '143 patent, is a "material" term that requires additional detail in the pleadings for three reasons. First, the parties' pre-suit correspondence focused on this term. D.I. 12-5. Second, the USPTO also recognized that the "primary source of the magnetic field" was important in its reasons for allowance. D.I. 12 at 6; 12-1. Third, RFID technology is more complex than a single photograph, as cited in VTT's claim chart. D.I. 1-2 at 4. The "fold" and it acting as "the primary source of [the] magnetic field" is central to the claimed technology and is therefore material to proving VTT's infringement allegations. D.I. 12 at 14-16. Thus, VTT's failure to map the "primary source of the magnetic field" to the Accused Instrumentalities dooms its Complaint. *Bot M8*, 4 F.4th at 1352-53.

Even considering the pleading in *AlexSam*, the complaint in that case not only expressly maps each claim limitation to the accused products (using claim charts and photos), **but also incorporates by reference an expert declaration to explain how the accused products infringe**. 119 F.4th at 42. That is not the case here. VTT's threadbare claim charts fail to consider the materiality of the "primary source of a magnetic field" claim limitation that, as mentioned (1) was central to the parties' pre-suit correspondence and the instant dispute; and (2) formed the basis for the '143 patent's reasons for allowance. D.I. 12 at 6, 13-16. And, VTT failed to explain how a "well-known source" equates to a "primary source," and VTT certainly did not cite any expert supporting its positions, which does not "place the alleged infringer on notice of what activity . . . is being accused of infringement." D.I. 12 at 16; *Bot M8*, 4 F.4th, at 1352. This omission is especially inexcusable because VTT, a "globally recognized research organization," should be an expert in this subject matter and know what it is alleging. D.I. 16 at 3.

### D. In Its Opposition, VTT Raises New Infringement Theories for the First Time, Yet It Still Ignores the Crucial "Primary Source of a Magnetic Field" Limitation

Fourth, in its Opposition, VTT offers a brand new theory, not mentioned at all in its Complaint (or patent), as to what constitutes a "primary source"—that the fold geometry in the Accused Instrumentalities creates a magnetic field concentration for "far-field" radiation. D.I. 16 at 15-17. But, the Court should disregard VTT's "far-field" allegations, because they are not mentioned in the Complaint. *Com. Of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Notably, when asserting this "far-field" theory, VTT does not specifically cite to its Complaint nor does the '143 patent even mention "far-field." *See* D.I. 16 at 15-17. Even if the "far-field" theory made its way into the Complaint, the Court should still dismiss the Complaint because it also fails to adequately plead the critical "primary source" limitation.

Also, this new theory necessarily fails because (1) it completely disregards the "source" element; and (2) it contradicts the teachings in both the '143 and '619 patents. VTT concedes that the source of a magnetic field is created by an electrical current. D.I. 16 at 15 ("the fold completes a conductive loop"); *id*. at 17 ("current flows through the fold, producing a magnetic dipole"). Yet, there is nothing inherent about a "fold" structure that creates an electrical current. D.I. 12 at 17. In its response, VTT avers that the fold "**support[s]** circulating currents that generate magnetic field components." D.I. 16 at 16. (Emphasis added.) Essentially, VTT posits that because a fold exists, it does not need to plead "*primary* source." *See id*. at 15-17. Yet, VTT would still need to plead the critical element, and it has not. *Bot M8*, 4 F.4th at 1353 (the materiality of a claim element is considered in the level of detail required for a complaint). Also, VTT's interpretation doesn't make logical sense. The tag in question is an unpowered passive tag, whose magnetic field depends on inputs from the reader and the interactions between the reader and the tag. *See* '143 patent, 1:45-56. When VTT claims that the "fold" inherently acts as a "primary" source of a magnetic field when interacting with an external field, VTT must either believe it happens in all situations (which is unrealistic due to the sensitivity of RFID tags) or in conditions that are not explained in the Complaint or cited materials. *See id*. None of these alternatives are explained in the pleading.

III. **DISMISSAL IS ALSO PROPER BECAUSE VTT FAILS TO ASSERT INDIRECT INFRINGEMENT, WITH CONCLUSORY ALLEGATIONS AND/OR ALLEGATIONS BASED SOLELY ON ALLEGED "PLAUSIBLE INFERENCES"**

    A.    **VTT Fails to Plead Indirect Infringement (VTT Cannot Show Intent)**

        1.    **VTT Fails to Plead Actual Knowledge of '143 Patent Since 2018**

VTT argues that "Defendants were willfully blind to the '143 patent. . . as early as 2018," based on an "April 2018 conference" and a "list of patent families covering that technology." D.I. 16 at 20. But, VTT's arguments hold no water. First, courts have held that conversations like the discussion at the "April 2018 conference" are insufficient to form the basis for a willful blindness

7

argument. *See Kirsch Research and Development, LLC v. Tarco Specialty Products, Inc.*, 2021 WL 4555802, *2–*3 (W.D. Tex. Oct. 4, 2021) (rejecting argument that accused infringer attending the same trade show as patentee showed knowledge of the patent). Second, mere knowledge of a portfolio's existence is insufficient to establish the knowledge requirement for claims of indirect infringement. D.I. 12 at 26; *see Helios Streaming, LLC v. Vudu, Inc.*, 2020 WL 2332045, at *9 (D. Del. May 11, 2020). In *Helios Streaming*, the court determined that complaint failed to "give rise to a reasonable inference of willful blindness" because the letter incorporated by reference into the plaintiff's complaint did not "expressly accuse [defendant] of infringement" and did not identify "how [defendant's] website or [defendant's] apps might infringe the patents listed" in plaintiff's patent portfolio." *Id.*

Here, as in *Helios*, VTT sent HID a letter with a "list of patent families covering [RFID] technology. D.I. 16 at 20. Yet, VTT's letter failed to accuse HID of infringement at the time and did not identify which products would infringe any patent on the list. D.I. 12-8. In fact, the '143 patent that VTT currently asserts is not even included in the list—only the PCT publication that *eventually* issued as the '143 patent. VTT willful blindness arguments, as a matter of law, fail.

### 2. VTT Fails to Plead That Defendants Induced Third Parties to Infringe as Defendants Do Not Have the Specific Intent to Infringe

VTT also argues that the challenges to specific intent in the Motion to Dismiss somehow "misstate the legal standard," challenging reliance on Delaware cases addressing induced infringement—*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, 530 F.Supp.3d 468, 490 (D. Del. 2021) and *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F.Supp.2d 225, 229 (D. Del. 2012). D.I. 16 at 21. VTT's arguments fail based on the failure to allege specific intent.

According to VTT, the *Bench Walk Lighting* court dismissed the induced infringement claims solely based on "inoperable links" in the plaintiff's first amended complaint. *See* D.I. 16 at

8

22. But VTT omits the first—and crucial—part of the court's reasoning from the case—the first amended complaint's text includes "no discussion of the content of … technical manuals or data sheets that show *how* 'Defendants' instruct these third parties to infringe." 530 F.Supp.3d at 490.

VTT also argues that *MONEC* is irrelevant because the plaintiff there—unlike VTT here—did not cite to any links in its complaint, which led to the court's dismissal of its indirect infringement allegations. D.I. 16 at 22. The "links" that VTT discusses are irrelevant as the *MONEC* court pointed to similar conclusory language addressed in *Bench Walk Lighting,* when dismissing the plaintiff's infringement claims. 97 F.Supp.2d at 234 (plaintiff's statements directed to "selling, supplying, and instructing" customers contained no facts to establish intent).

Thus, as to both cases, VTT's arguments miss the point. Like in *Bench Walk Lighting* and *MONEC*, VTT provide no allegations directed to *how* Defendants instruct third parties to infringe, opting for conclusory statements instead. *See* D.I. 1 ¶36 (alleging that Defendants "provide information and technical support to their customers" without any supporting details as to why that activity infringes). VTT's conclusory arguments to Defendants' intent to induce infringement thus fail.

### B. VTT's Infringement Allegations as to Omni-ID Should Be Dismissed as Based on "Plausible Inferences" and Are Therefore Conclusory and Unsupported

VTT bases its infringement allegations against Omni-ID solely on certain "plausible inferences that arise from the corporate relationship between Omni-ID and HID." D.I. 16 at 18. It is well-established that a corporate relationship alone is insufficient to prove infringement. *See Ethypharm S.A. France v. Bentley Pharms., Inc.,* 388 F.Supp.2d 426, 432 (D. Del. 2005) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Here, VTT states, without any legal support, that "HID Global and Omni-ID have jointly developed, manufactured, and sold RFID products

9

incorporating the technology at issue in this case." D.I. 16 at 19. VTT's conclusory statements fail to allege in any way how HID's and Omni-ID's activities are related and thus should be dismissed.[1]

### IV.  VTT'S REQUEST FOR LEAVE TO AMEND (TO SUBMIT AN AMENDED COMPLAINT) SHOULD BE DENIED, AS ANY ATTEMPT TO AMEND ITS COMPLAINT WOULD BE FUTILE

Finally, if this Court is inclined to dismiss, VTT requests leave to amend its Complaint. D.I. 16 at 22. VTT's request should be denied. While leave to amend is often "freely given," courts may deny leave to amend "when the amendment would be futile." *EMC Corp. v. Zerto, Inc.*, 2014 WL 3809365 at *2 (D. Del. July 31, 2014); *see also CyboEnergy, Inc. v. Altenergy Power Sys. USA,* 2023 WL 5968000, at *5 (W.D. Tex. Sept. 13, 2023) Amendment is futile when the pleading, even as amended, fails to state a claim upon which relief can be granted. *CyboEnergy*, 2023 WL 5968000 at *3 n.4. In patent cases, this occurs when a claim element "cannot plausibly be construed to include or be the equivalent" of an accused product. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018).  Here, amendment would be futile.  As explained in its opening brief and in Sections II.A-II.C above, the Accused Instrumentalities cannot infringe as a matter of law. *See, e.g.* D.I. 12 at 21 (with a detailed explanation, that a "stronger magnetic field radiates from the integrated circuit mount—away from the fold," and therefore the Accused Instrumentalities cannot meet the "primary source" limitation). Because there is nothing that VTT can do to amend its Complaint to plausibly allege that the Accused Instrumentalities infringe, VTT's request for leave should be denied.

### V.  CONCLUSION—DISMISSAL IS WARRANTED AND NEEDED

For the foregoing reasons, Defendants respectfully request that the Court grant dismissal and deny VTT's request for leave to amend its Complaint, as any such amendment would be futile.

---

[1] Using the plural form "Defendants" does not shift the burden to allege facts. "Plausible inference" of Omni-ID's involvement is nothing more than mere speculation.

|  |  |
|---|---|
| OF COUNSEL:<br>Lionel M. Lavenue<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2700<br><br>Dated: May 12, 2025 | <u>/s/ Emily S. DiBenedetto</u><br>Andrew E. Russell (No. 5382)<br>Emily S. DiBenedetto (No. 6779)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>arussell@shawkeller.com<br>edibenedetto@shawkeller.com<br>*Attorneys for HID Global Corporation and OMNI-ID USA, Inc.* |

11