UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

––––––––

No. 1:25-cv-00229

––––––––

**VTT Technical Research Centre of Finland Ltd.,**
*Plaintiff,*

v.

**HID Global Corporation et al.,**
*Defendants.*

––––––––

**OPINION AND ORDER**

Plaintiff brought this action alleging that defendants HID Global Corporation and Omni-ID USA, Inc. are infringing U.S. Patent No. 7,724,143 (the '143 Patent). Doc. 1 at 1, 5. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 11. Defendants argue that plaintiff failed to adequately allege (1) infringement of the "primary source" element of claim 1, (2) indirect infringement, and (3) any infringement claim against defendant Omni. Doc. 12 at 21, 26, 29. For the reasons below, defendants' motion is denied.

**I.  U.S. Patent No. 7,724,143**

The '143 Patent teaches an antenna construction, and operation thereof, for use with remote-identifier circuits. '143 Patent col. 1 ll. 4–9. Remote-identifier circuits enable a device to transmit unique identification data wirelessly to a receiver. *Id.* col. 1 ll. 10–25. The specification teaches using antennas for radio-frequency identification (RFID) transponders—devices that receive radio signals and transmit different signals. *Id.* col. 1 ll. 10–15, 35–39. An RFID transponder transmits data when it encounters "a transmit command from a reading device and the reading device illuminates [the RFID transponder] with a radio signal." *Id.* col. 1 ll. 35–39. In short, the antennas enable the RFID device to wirelessly communicate and transmit data with a "reading device." *See id.* Reading devices can transmit this data to a computer system or

software for data processing and/or storage. *See id.* fig. 1, col. 2 ll. 58–67. RFID transponders can be used "in industries ranging from retail and logistics to healthcare and transportation." Doc. 1 at 7.

The '143 Patent has one independent claim, which covers:

> 1. Antenna construction for a double-ended antenna circuit, which comprises
>
> > a conductive ground place on a first surface,
> >
> > a transmission line on at least one second surface, the transmission line connected to the ground plane through a fold in the edge of the antenna construction, *so that the fold acts as a primary source of a magnetic field,*
> >
> > an insulation layer arranged between the first and the second surfaces, and
> >
> > an electronic component, in which there is a double-terminal antenna connector, connected to the antenna construction,
>
> wherein
>
> > the electronic component is attached to the second surface of the antenna construction and connected from the first antenna terminal to the transmission line and from the second terminal to either a second transmission line or the fold.

'143 Patent col. 6 ll. 2–19 (emphasis added).

Defendants argue that the "primary source" claim element was not adequately alleged. Doc. 12 at 21–25. Figure 3, reproduced below, provides a helpful illustration of the '143 Patent's teachings.



'143 Patent fig. 3. Element 1 pictured above is the "fold" that "acts as the primary source of the magnetic field." *Id.* col. 3 ll. 15–16; *see also id.* col. 6 ll. 7–8 (claim 1 covers "the fold acts as a primary source of a magnetic field"). Element 2 is the source "of the electric field (the open end of the resonator)," 3 is the transmission line, 4 is the RFID circuit, 6 is the conductive ground plane, and 7 is the insulation layer. *Id.* col. 3 ll. 12–13; *id.* at [57]; *see also* Doc. 12 at 7.

Plaintiff accuses numerous RFID tags of infringing the '143 Patent. Doc. 1 at 10. Plaintiff's claim chart, attached to the complaint, provides an illustration of one accused product, the HID IQ On-Metal 350 M730 RFID Tag:



Doc. 1-2 at 5. The claim chart also cites U.S. Patent No. 7,880,619 ('619 Patent), which teaches that "[t]he magnetic field . . . can be seen to be greatest close to the metal base portion and tends to zero at the open end of the cavity." *Id.*; '619 Patent col. 17 ll. 61–63; *see also id.* fig. 18b. Defendants state that plaintiff failed to adequately plead that the accused products' "fold" is the primary source of a magnetic field. Doc. 12 at 8.

## II. Legal standard

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Federal Circuit reviews procedural issues, including Rule 12(b)(6) motions, according to regional circuit law. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018). In the Third Circuit, courts conduct a two-part analysis for Rule 12(b)(6) motions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, "accept[ing] all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Id.* at 210–11. Second, the court determines whether the alleged facts sufficiently show a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Assessing plausibility, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up).

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). The complaint need only "place the

alleged infringer on notice of what activity is being accused of infringement." *Id.* (cleaned up). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.*

## III. Analysis

Defendants moved to dismiss plaintiff's complaint for failing to adequately plead (1) infringement of the "primary source" element, (2) indirect infringement, and (3) Omni's infringement. Because plaintiff's complaint provided adequate notice of the alleged infringement, defendants have not proven that the complaint should be dismissed under Rule 12(b)(6).

### A. Direct infringement of "primary source"

Defendants narrowly assert that plaintiff's complaint fails to adequately plead direct infringement of a key limitation of claim 1: that the fold is a primary source of a magnetic field. Doc. 12 at 21. The court assumes defendants do not contest notice as to the other claim elements. *See* Doc. 12 at 21–26.

Defendants advance three arguments, each of which is discussed in turn:

(1) plaintiff's allegation that all folds are primary sources of magnetic fields is unsupported, *id.* at 21;

(2) plaintiff's claim chart recognizes the fold structure but does not plead that the fold acts as a primary source, *id.* at 23; and

(3) plaintiff's reference to the '619 Patent does not apply to the accused products. *Id.* at 24.

Plaintiff's claim chart alleges that the "fold region acts as a primary source of a magnetic field because it forms a continuous conductive loop at the transition between the first and second surfaces of the antenna structure." Doc. 1-2 at 4. Defendants attest

that this pleading is inadequate because "there is nothing inherent about a fold that acts as a *source* of a magnetic field"; rather the magnetic field is produced by "an electromagnetic current moving through a conductor." Doc. 12 at 22 (citing Doc. 12-9 at 3). Because the accused products generate electromagnetic current away from the fold, defendants add, the accused products' magnetic field must also originate away from the fold.

Essentially, defendants contest the merits of plaintiff's infringement theory by stating that the complaint and claim chart ignore well-understood scientific principles. This misconstrues the Rule 12(b)(6) standard. "[A] plaintiff need not prove its case at the pleading stage." *Bot M8*, 4 F.4th at 1354. "Instead, it is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement." *Id.* at 1352 (cleaned up). Here, the claim chart alleges that the fold is a primary source "because it forms a continuous conductive loop . . . between the first and second surfaces of the antenna structure. . . . This current loop produces a localized magnetic dipole, which is a well-known source of a magnetic field in resonant structures" like the accused products. Doc. 1-2 at 4–5. Thus, despite defendants' selective quoting of the same section of the claim chart, defendants were on notice of the alleged infringement—an electric current running between the first and second surfaces produces a magnetic field emanating from the fold. Defendants are free to advance non-infringement arguments on a motion for summary judgment. *See Mallinckrodt IP Unlimited Co. v. B. Braun Med., Inc.*, No. 1:17-cv-00365, 2018 WL 2254540, at *1 (D. Del. May 17, 2018) ("[Defendants'] motion essentially asks the Court to take its contrary allegations as true and to resolve . . . infringement, on a motion filed pursuant to Federal Rule of Civil Procedure 12. This the Court cannot do."); *see also Fowler*, 578 F.3d at 210 (courts deny motions to dismiss when a reasonable reading of the complaint would entitle plaintiff to recovery).

Next, defendants contend that plaintiff's claim chart identifies the fold structure, but does not allege that the fold structure

acts as a primary source of a magnetic field. Doc. 12 at 23. Defendants add that plaintiff did not plead that the fold was a "primary" source because it "provides no facts showing that other potential sources of the magnetic field either do not exist or are less significant." *Id.* at 24. This is nothing more than a thinly veiled claim-construction argument. Neither the court, nor the plaintiff, has construed "primary" to mean more significant.

Though, plaintiff has alleged "that the magnetic field is greatest close to the" fold, which undercuts defendants' assertion that plaintiff "provides no facts." Doc. 1-2 at 5. To be sure, plaintiff cites defendant HID's own patent for that assertion. *Id.* (citing '619 Patent col. 17 ll. 61–63, fig. 18b); Doc. 16 at 17. That alone is enough to raise a right to relief above the speculative level. Even so, the court will not adopt defendants' "more significant" construction of "primary source" at this stage. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349–50 (Fed. Cir. 2018) (reversing Rule 12(b)(6) dismissal when defendants' arguments "read like classic *Markman* arguments" and noting that the "purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*").

Lastly, defendants urge that it is unreasonable to assume the structures disclosed in the '619 Patent apply to the accused products. Doc. 12 at 24. In the '619 Patent, the components are electrically isolated, whereas in the '143 Patent the electronic component is directly connected to the antenna structure; thus, according to defendants, the magnetic fields are different. *Id.* at 25. That may be so, but the court is not free to accept defendants' non-infringement or claim construction theories at this stage when they conflict with plausible allegations. *See Mallinckrodt*, 2018 WL 2254540, at *1; *Nalco*, 883 F.3d at 1349–50; *Fowler*, 578 F.3d at 210. Defendants failed to show that it is implausible that a magnetic field is produced by the fold in the accused products and are sufficiently on notice of plaintiff's infringement theory; any factual disagreements with plaintiff's theory are not grounds to grant a Rule 12(b)(6) motion.

### B. Indirect infringement

Defendants argue that plaintiff's claim for indirect infringement should be dismissed because plaintiff failed to adequately plead (1) direct infringement, (2) pre-suit knowledge or willful blindness, and (3) the required elements of induced infringement. Doc. 12 at 26–29. As explained above, plaintiff adequately pleaded direct infringement. The remaining two arguments are addressed in turn.

A claim for indirect infringement "requires knowledge of the existence of the patent that is [allegedly] infringed." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011). "At the pleading stage, a plaintiff need only allege facts allowing the reasonable inference that the defendant had knowledge of the patent-in-suit in the key time period." *Varian Med. Sys. v. Elekta AB*, No. 1:15-cv-00871, 2016 WL 3748772, at *3 (D. Del. July 12, 2016), *R. & R. adopted by* 2016 WL 9307500 (D. Del. Dec. 22, 2016).

Plaintiff, attempting to engage in licensing negotiations, sent defendants a letter identifying the asserted patent in 2018. Doc. 1 at 7–9; Doc. 12-8 at 4. While knowledge of a patent portfolio is insufficient to establish pre-suit knowledge, a letter identifying a specific patent is sufficient to establish pre-suit knowledge at the pleading stage. *Jackson v. Seaspine Holdings Corp.*, No. 1:20-cv-01784, 2022 WL 610703, at *5 (D. Del. Feb. 14, 2022). Because plaintiff has adequately pleaded pre-suit knowledge, the court does not reach willful blindness.

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (cleaned up). Circumstantial evidence may suffice to prove specific intent. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).

Here, plaintiff alleges that defendants supply third parties with "website materials, instructions, datasheets, promotional materials and the like" to instruct third parties on how to use the accused products to infringe the '143 Patent. Doc. 1 at 11 (citing numerous links to HID's website). Defendants contend that this alone does not adequately plead specific intent to induce infringement because plaintiff does not show how the cited material teaches infringement. Doc. 12 at 29. Because plaintiff's complaint "references brochures and other promotional material" and alleges that defendants "encourage[d], instruct[ed], enable[d], and otherwise cause[d]" third parties to infringe, "these allegations, which must be taken as true, are sufficient at the pleadings stage to make it plausible that [defendants] indeed intended that its customers infringe" the '143 Patent. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024). Thus, plaintiff adequately pleaded indirect infringement.

### C. Omni's infringement

Lastly, defendants move to dismiss plaintiff's allegations against defendant Omni. Doc. 12 at 29–30. Plaintiff alleges that HID acquired Omni and, since then, "HID Global and Omni-ID have jointly developed, manufactured, and sold RFID products incorporating the" the '143 Patent. Doc. 1 at 4. Defendants counter that "[a]ll the accused products are identified as HID products" and none of the accused products can be attributed to Omni. Doc. 12 at 29–30.

"[A] subsidiary cannot be liable for the acts of a parent corporation unless the corporate veil is pierced." *Phonometrics, Inc. v. Resinter N. Am. Corp.*, 124 F.3d 229, 1997 WL 580519, at *2 (Fed. Cir. Sep. 17, 1997) (unpublished table decision). To pierce the corporate veil and "state a claim based on an alleged parent-subsidiary relationship, a plaintiff would have to allege: (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil." *M2M Sols. LLC v. Telit Comm'ns PLC*, No. 1:14-cv-01103, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015) (cleaned up). Plaintiff alleged HID acquired Omni and that the

two companies jointly developed the allegedly infringing technology. Doc. 1 at 4. That alone is sufficient to put defendants on notice of plaintiff's patent infringement claims against both companies, and plaintiff is at least entitled to further discovery on the issue. *See Ethypharm S.A. Fr. v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 432 (D. Del. 2005). Omni is free to renew its arguments "if, as discovery proceeds, it becomes evident that [Omni] cannot be liable." *Id.*

### IV. Conclusion

For those reasons, defendants' motion to dismiss under Rule 12(b)(6) (Doc. 11) is denied. Defendants must answer or otherwise respond to plaintiff's complaint within 14 days of this order under Federal Rule of Civil Procedure 12(a)(4)(A).

*So ordered by the court on November 24, 2025.*

J. CAMPBELL BARKER
United States District Judge